[No. 3,203.]

## THEODORE LE ROY v. FRANK CUNNINGHAM.

CONFLICT IN EVIDENCE.—When there is a substantial conflict in the evi-
dence, the appellate Court will not disturb the judgment of the Court below,
on the ground that it is not warranted by the testimony.

POSSESSION OF PUBLIC LAND. — When a person erects a house upon a
tract of public land and moves into it, but does not cultivate or inclose any
part of the tract, his possession does not extend to the entire tract.

GRANT BY CONGRESS OF "POINT SAN JOSE MILITARY RESERVATION"
IN TRUST FOR OCCUPANTS.—The Act of Congress of July 1st, 1870, relin-
quishing to the City of San Francisco, in trust for the present or former
occupants, the "Point San José Military Reservation," in the City of San
Francisco, did not make those who, many years before the passage of the
Act, obtained deeds for large tracts from grantors out of possession, and
who performed no act except to erect a house within the limits of the tract,
its beneficiaries.

IDEM.—The entry upon one hundred and sixty acres of said reservation,
under a deed describing it, and the erection of a house on it, without inclos-
ing or cultivating any part of it, did not constitute an actual possession of
the whole one hundred and sixty acres, within the purview of said Act of
July 1st, 1870.

IDEM.—If a tenant, who has leased from one in possession of a portion of the "Point San José Military Reservation," sells out to a stranger and puts him in possession, the stranger is not in bona fide possession, within the meaning of that phrase as used in said Act of July 1st, 1870, and is not entitled to the benefit of said Act as a *cestui que trust.*

IDEM.—The "actual bona fide possession" entitling a party to a conveyance of the legal title, referred to in the Act of July 1st, 1870, releasing to San Francisco, to hold in trust for the possessors, the "Point San José Military Reservation," is an actual possession, which was bona fide as between adverse claimants, and not as against the Government. It is immaterial whether the possession as against the Government was good or bad.

IDEM.—A person who is not entitled to a conveyance from the city, cannot raise the question whether the City of San Francisco made the conveyance of a portion of the "Point San José Military Reservation" to the person who was entitled to it under the Act of Congress of July 1st, 1870.

APPEAL from the District Court of the Fourth Judicial District, City and County of San Francisco.

The defendant appealed.

The other facts are stated in the opinion.

*James C. Zabriskie* and *H. Cook*, for Appellant.

In February, 1852, Sparks instituted suit in the Fourth District Court, San Francisco, in ejectment against one Rossiter, to recover possession of a portion of the land purchased by him from Havens on the 19th of July, 1852; he recovered judgment against Rossiter for possession, with costs and damages. On the nineteenth of November, same year, Sparks was placed in possession by the Sheriff.

"A person in the possession of public land, under a judgment giving him possession, is presumed to be rightly in the possession, until some one shows a right to the possession derived from the United States." (*Rich* v. *Maples*, 33 Cal. 103.)

The rule is, that the presumptions of law are in favor of the jurisdiction and regularity of the proceedings of a Court of general jurisdiction—such as our District Court—and that a judgment entered in such Court confers a legal right, until

set aside or reversed on appeal. (*Hahn* v. *Kelley*, 34 Cal. 393.)

If one enters upon such land with the intention of annoying and "black-mailing" the owner, his act is "mala fide." If, however, he should be permitted to continue his occupation for five years, the law would then construe the entry as bona fide, and award title. Whilst a bona fide entry may be made upon the public land of the United States open to such entry (in fact, an entry must be made or no title can be secured), no such entry can be made upon land reserved for military purposes.

*B. J. Brooks*, for Respondent.

The first question is, who is the party who by this Act is made the *cestui que trust?* Appellant's counsel seem to be of the opinion that the earliest possessor is the *cestui*, unless he has lost his right by abandonment. This was the principle of the Van Ness Ordinance and of the laws confirming it, and we all know that it has given rise to a great deal of litigation, and has, in a great measure, defeated the avowed object of quieting title.

When I drew this Act I did not intend that such questions should arise under it. The operative date is the passage of the Act. It is the person then in the possession. If there is a person in the actual occupancy, as was the case here, that person is the beneficiary without any exception. But if no such person is in the possession, at the date of the Act, then the beneficiary is the person who was dispossessed by the military authorities, unless he happens to be a trespasser on the prior possession of one who might recover from him at law. In this case, as the plaintiff was in the possession by his tenant, at the time of the military occupation, he was the beneficiary.

By the Court, CROCKETT, J.:

The complaint is in the usual form, to recover the possession of a lot included within the tract known as the "Point San José Military Reservation," situate in the City and County of San Francisco. The plaintiff deraigns title through a deed from said city and county, purporting to have been executed in accordance with the requirements of the Act of Congress of July 1st, 1870, relinquishing to said city and county the title to said reservation in trust: "*First,* to maintain all streets and alleys as now laid out upon the official map of the City of San Francisco; *second,* and then, in trust, to grant and convey the remainder of said lands to the parties severally who are, at the date of the passage of this Act, in the actual bona fide possession thereof by themselves or their tenants, and in such parcels as the same are so held and possessed by them, or who, if they have not such possession, were deprived thereof by the United States military authorities when they went into the occupancy of said military reservation, or were deprived thereof by intruders or trespassers against whom possession may be recovered by legal process." (Session Acts, 1869–70, p. 186.) Under this Act, the proper authorities of the city and county conveyed the legal title to the lot in controversy to the plaintiff, as the person properly entitled thereto. In his answer the defendant denies the title of the plaintiff, and sets up title in himself, and in a supplemental answer, in the nature of a cross-complaint, alleges that from September, 1849, he and "his assigns" have been in the continued and exclusive occupation and possession of said premises, "except for a short time, when forcibly or illegally dispossessed, and that he is the owner in fee simple thereof, and is entitled in law and equity to a full and legal conveyance for the same." He then avers that the authorities of the city and county ordered the execution and delivery of the deed to the

plaintiff "under a misapprehension of the facts in said case and the rights of said parties in relation to said land." The prayer is, that the plaintiff be adjudged to hold the legal title in trust for the defendant, and that he execute to him a proper conveyance thereof. In his answer to the cross-complaint, the plaintiff denies all its material allegations, and avers that he was personally and by his tenants in the actual possession and occupation of the land when the military authorities of the United States took possession of the reservation, and was not a trespasser or intruder upon the possession or occupation of the defendant or any other person, and that the plaintiff was ejected from the land by the United States military authorities, and was therefore entitled to the conveyance. The issues framed upon the cross-complaint were first disposed of, and were decided in favor of the plaintiff, Le Roy. The action at law was then tried, and a judgment entered for the plaintiff, from which, and from an order denying his motion for a new trial, and also from the decree dismissing the cross-complaint, the defendant appeals.

The theory of the defendant is that in March, 1850, one Hervey Sparks purchased and took a conveyance from one Haven for a tract of fifty-three and a half acres, which included the demanded premises; that Sparks immediately inclosed the whole tract with a fence sufficient to turn cattle, and erected a house within the inclosure, which he leased to a tenant, who occupied it for a year, when the house was so injured by a storm as to be uninhabitable; that in November, 1850, by an order of the President of the United States, the land was reserved for military purposes, and by another order, issued in December, 1851, the reservation was made more specific, and the boundaries were more accurately defined; that shortly after the date of the last named order, and during the year 1852, Sparks was notified by the military authorities that unless he quit the possession of the land within thirty days he would be removed by an armed force;

that in obedience to this notification he quit the possession, but finding that one Rossiter had entered upon one of the lots (not the lot in controversy) included within the fifty-three and a half acres, Sparks commenced an action against him to recover the possession, and in July, 1852, recovered a judgment, under which he was restored to the possession of the lot by the Sheriff in November of that year; that from time to time Sparks made sales and conveyances of portions of said tract, and never abandoned his claim to it; that in March, 1870, he sold and conveyed to the defendant the lot in controversy, and the defendant was in the actual possession under this conveyance at the time of the passage of the Act of Congress of July 1st, 1870, and is therefore the beneficiary, who, by the terms and spirit of the Act, was entitled to a conveyance of the legal title. The chief corner-stone on which this entire theory rests is the alleged fact that before the land was reserved by the President, Sparks had the actual possession of it. If he never had the possession he could not, of course, have been deprived of it, either by the military authorities or by an intruder. On the question of his possession, so far as the erection of the fence is relied upon, there is a substantial conflict in the evidence. Sparks and the other witnesses for the defendant testify to the erection of the fence in the Spring or Summer of 1850, and that it remained in tolerably good repair for about two years, and several of them, including Sparks himself, testify that portions of it remained for a much longer period. On the other hand, Eggleton, a witness for the plaintiff, testifies that in November or December, 1850, he was engaged in business as a butcher, and from that time up to the year 1852 crossed the land alleged to have been inclosed by Sparks three or four times a month, driving calves into the city; that there was no fence there, nor any remains of one, during that period. Another witness, Snyder, testified that in 1850 and 1851 he occasionally crossed this land, and saw no fence

there in either year. Manrow, who has resided since the latter part of the year 1851 in the immediate vicinity of the alleged fence, and traversed the ground almost daily, says he saw no fence there, nor any trace of one. Burr has known the land since July, 1852, and has resided in the immediate vicinity since November of that year, but saw no fence, nor any remains of one. The testimony of these witnesses, it is true, refers to a period a short time subsequent to the Spring or Summer of 1850, when the fence is alleged to have been built; but they directly contradict the plaintiff's witnesses in respect to the existence and condition of the fence in 1851 and 1852, and it may be that the Court below considered the witnesses for the defendants, who testified on this point, as discredited. It was for that Court, and not for us, to weigh the testimony, and to decide which of the conflicting witnesses were entitled to credence. There being no findings, we must presume, in support of the judgment, that the Court determined the contested fact as to the fence in favor of the plaintiff, and regarding the evidence as substantially conflicting on that point, we cannot disturb the judgment on the ground that it is not justified in this respect by the evidence. Assuming, therefore, as we must for the purposes of this decision, for the reasons just stated, that there was no fence, or at least none sufficient to constitute a substantial inclosure, the only other act of dominion performed by Sparks tending to establish his actual possession was the erection of the house, which was occupied for a time by his tenant. There was no cultivation of any portion of the land, and the erection of the house constituted an actual possession of only so much land as the building covered. The deed under which he claimed, it is true, described the tract by metes and bounds. But the land was a portion of the public domain, and the erection of the house, and its occupation by his tenant, did not give him the *actual* possession of the whole tract under the facts disclosed by the

record. (*Wolfskill* v. *Malajowich*, 39 Cal. 279.) When the Act of Congress described the beneficiaries as those who were or had been "in the *actual*, bona fide possession" of the land, it had no reference to persons who, twenty years before the passage of the Act, may have obtained deeds for large tracts from grantors out of possession, and without title, and who, thereupon, performed no other act of dominion, except to erect a shanty within the exterior lines of the tract conveyed. It appears from this record that Wilson conveyed to Tooker one hundred and sixty acres, including the premises in controversy. If Tooker had erected a shanty on some portion of the tract, and occupied it for a time, but had not cultivated or inclosed any part of it, it could not be claimed, with any show of reason, that the erection and occupation of the shanty of themselves constituted an *actual* possession of the whole tract, within the purview of the Act. On such a construction of the statute, if the deed to Sparks of March, 1850, had included the whole reservation, and if he had erected a shanty on some portion of it, and leased it for a month to a tenant, he would thereby have acquired an *actual* possession, which, by the terms of the Act, would have entitled him to a conveyance in fee for the whole tract. In my opinion, this would not have constituted an actual possession within the spirit and purview of the statute. (*Davis* v. *Perley*, 30 Cal. 638.) My conclusion, therefore, is, that it does not appear from this record that Sparks ever had the actual possession of the lot in controversy; and, consequently, he could not have been deprived of the possession, either by an intruder or by the military authorities. Neither he nor his grantee, therefore, would be entitled to the benefit of the Act. But the defendant was in the actual possession at the time of the passage of the Act, and if nothing further appeared it might be presumed that he was also in the "bona fide" possession, though it is not very clear what is meant by that phrase, as employed in

the statute, and as applied to the possession of land.   It satisfactorily appears, however, in this case, that as early as 1854 one Haskell, under whom the plaintiff claims, erected on block thirty-nine, of which the lot in contest is a part, a building and fixtures for drying hides, and "trying out" tallow; that said business was prosecuted for several years, and in 1861 the whole block was inclosed with a substantial fence, by Steinbach, claiming under Haskell; that in 1866 the present plaintiff, who had succeeded to Steinbach's rights, leased to one Mahoney the lot in controversy; that Mahoney erected a house on the lot, and at or after the expiration of his term sold the house to one Gray; that thereupon Gray took a lease from the plaintiff for six months, and occupied under the lease until the expiration of his term, after which he removed from the premises, leaving the house unoccupied; and subsequently, in February, 1870, sold and conveyed the house to the defendant, who immediately entered and was in the actual possession at the time of the passage of the Act of Congress.   Waiving the question whether the entry by the defendant under these circumstances was in subordination to the title of the plaintiff as the landlord of Gray, and that for that reason, whilst withholding the possession, he could not dispute the plaintiff's title, I am of opinion that the possession of the defendant was not a bona fide possession in the sense of the statute. He was an intruder upon the prior possession of the plaintiff and his grantor, Steinbach, and from whom the plaintiff was entitled to recover the possession "by legal process."   He comes, therefore, within the category of those who are not entitled to the benefit of the Act.   It is insisted, however, by counsel, that the possession of the plaintiff and his grantor, Steinbach, was not a bona fide possession, inasmuch as they entered long after the land was reserved and their entry upon a military reservation was prohibited by statute. It is said that for this reason their entry and possession must

have been mala fide, in which event the plaintiff was not entitled to the conveyance of the legal title. If the soundness of this proposition be conceded, it would not benefit the defendant, inasmuch as he stands in the same category. He entered on the reservation in March, 1870; and if the above proposition be sound *his* entry and possession were mala fide, and he would not be entitled to the conveyance which he demands.

But the proposition as stated by counsel is not tenable. The "actual bona fide possession" referred to in the statute as entitling the party to a conveyance of the legal title, is an actual possession, which was bona fide as between adverse claimants, and not as against the Government. If it were necessary, in order to entitle a person to the benefit of the Act, that his entry and possession shall have been in good faith as against the Government, the main purpose of the statute would be practically defeated. In releasing its title, it was not the intention of the Government to institute an inquiry whether those who might claim the benefit of the Act had entered and occupied in good faith as against the Government, but whether they had a bona fide possession as against other claimants. The fee of the land was in the United States, but inasmuch as many persons had settled upon it and expended their money and labor in improving it, Congress saw fit to release the title for the benefit of those in the actual possession, or who, if not in the actual possession, had been dispossessed either by the military authorities or by intruders or trespassers, from whom the possession might be recovered by legal process. The bona fides of the possession relates only to the good faith which characterized it as against adverse claimants, and it is wholly immaterial whether the entry, as against the Government, was in good or bad faith. All who had entered without a license from the Government were trespassers; and yet, if they had continued in the actual possession down to July

1st, 1870, they would have been entitled to the benefit of the Act, unless their possession was tortious and wrongful as against a prior possessor, in which event the latter was the beneficiary and entitled to the conveyance and the fee.   It is therefore immaterial in this case whether the possession of the plaintiff was mala fide as against the Government. The defendant having intruded upon the actual possession of the plaintiff, the possession which he thus acquired was mala fide, as between themselves and in the sense of the statute. He was therefore not entitled to a conveyance of the fee, and is not in a position to inquire whether it was rightfully conveyed to the plaintiff.   That was a question for the Board of Supervisors, in which the defendant had no concern, inasmuch as he was not entitled to the conveyance.   The plaintiff having the legal title, and the defendant having shown no right to the conveyance of the fee, the plaintiff is entitled to recover.

Judgment affirmed.