[No. 2,833.]

# WM. M. IBURG *v.* CHARLES SUANET, THOMAS H. HOLT, FRANCIS E. WEYGANT, HENRY McCREA, CHARLES MAYNE, WM. THOMPSON, JR., AND EUGENE L. SULLIVAN.

NEW TRIAL, WHERE THERE IS A CONFLICT IN THE EVIDENCE.—If there is a substantial conflict in the evidence, the Court will not grant a new trial on the ground that the verdict is against the evidence, unless the preponderance of evidence in favor of the party applying for the new trial is so great as to show that the jury must have acted under the influence of passion or prejudice.

EVIDENCE OF GOOD FAITH IN POSSESSION OF LAND.—Evidence that a party who entered on land was a qualified pre-emptioner, and that he entered upon it for the purpose of pre-empting, and took the necessary steps to acquire a pre-emption right, is not admissible for the purpose of showing the good faith of the possession of one who entered upon the same land under a deed from the pre-emptioner, but who was not qualified to pre-empt.

IDEM.—If a qualified pre-emptor enters upon land in the prior possession of another, and enters in good faith for the purpose of pre-empting, and then sells and delivers possession to one who is not a qualified pre-emptor, the possession of the one who is not a qualified pre-emptor is tortious as against the prior possessor.

WORDS "BONA FIDE ACTUAL POSSESSION."—The words "*bona fide* actual possession," in the act of Congress, passed March 8th, 1866, to quiet the title to certain lands within the corporate limits of the city of San Francisco, mean a possession which is *bona fide* as against adverse claimants, and not as against the Government.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

In July, 1863, Thomas A. Jones erected a small house on the land in dispute, and moved into the same. On the eleventh day of August, 1863, Jones and Francis E. Weygant conveyed the land to the Mary Anna Cook spoken of in the opinion. On the fourth day of December, 1866, said Mary Anna, being then twelve years old, conveyed one undivided one half of the land, by the consent of her father, to B. B. Newman; and on the twenty-ninth day of April, 1867, Newman sold and conveyed an undivided one fourth of it to the plaintiff. This was the plaintiff's title. The plaintiff's testimony tended to show that Jones lived in the house until January, 1867, when it was torn down, under the direction of the defendants; and that, at times, Mary Anna Cook and her mother slept and ate in the house after said Mary Anna received Jones' deed; and that she deeded it to Newman in consideration of legal services to be rendered by him in defending the title to the land, and of paying expenses attending such litigation.

The defendants claimed under Armstrong and Whipple, who, the testimony tended to show, resided on the land prior to 1861, and conveyed it to Barstow, Holt, Perley and others, January 8th, 1861. The defendants had judgment, and the plaintiff appealed.

The other facts are stated in the opinion.

*Fisher & Newman* and *Quint & Hardy*, for Appellant.

*Williams & Thornton*, for the Respondent.

By the Court, CROCKETT, J.:

The action is ejectment for a parcel of land situate in what is known as the Western Addition to the city of San Francisco, outside of the charter line of 1851, and, therefore, not within the limits affected by the Van Ness Ordinance. The plaintiff claims to be entitled to recover on the ground—First, of prior possession; and second, that

at the time of the passage of the Act of Congress of March 8th, 1866, entitled "An Act to quiet the title to certain lands within the corporate limits of the city of San Francisco" (14 Statutes at Large, 4), he or his grantor was in the *bona fide* actual possession of the demanded premises, and that having tendered a performance of all the conditions required by ordinance numbered 800 of the Board of Supervisors, which was subsequently ratified by the Act of the Legislature of March 27th, 1868 (Statutes 1867–8, p. 379), he became thereby invested with the legal title.

On the question of prior possession the evidence was conflicting, and we cannot disturb the verdict on the ground that the finding of the jury on that point was not justified by the evidence.

The jury having found, in effect, that the defendants and their grantors had the prior possession of the premises, the plaintiff contends, nevertheless, that on the 8th of March, 1866, he or his grantor had the *bona fide* actual possession, and was therefore entitled to the benefit of the Act of Congress of that date, whereby the title of the United States was relinquished to the city, in trust for such persons as at the time of the passage of the Act were in the *bona fide* actual possession. But if it be conceded that on the 8th of March, 1866, the plaintiff or his grantor had the actual possession, the *bona fides* of that possession was also a question for the jury, and the verdict being generally for the defendants, we must assume that the jury found that fact also against the plaintiff. If the evidence on this point be considered in the light most favorable to the plaintiff, there was, undeniably, a substantial conflict in it; and in such cases we uniformly refuse to set aside the verdict, unless the preponderance of the evidence against it is so great as to show that the jury must have been under the influence of passion or prejudice; and there is no such showing in this case.

The plaintiff, however, complains of certain rulings of the Court at the trial, excluding testimony offered by him tending, as he claims, to establish the *bona fides* of the possession on the 8th of March, 1866. The offer was to

show that when Jones, under whom the plaintiff claims, en-
tered upon the land, it was generally believed, and Jones
himself believed, that it was a portion of the public domain
of the United States, subject to pre-emption; that the Sur-
veyor-General of the United States of California, and the
Register of the local Land Office, so considered it; that it
was surveyed and sectionized as public lands of the United
States, and a plat of the survey was duly filed in the office
of the Register; that notice was given to settlers claiming
pre-emption rights, to perfect their claims; that Jones,
being a qualified pre-emptioner, filed his declaratory state-
ment within the proper time; that he subsequently, in 1864,
proved up his said claim and tendered payment of the pur-
chase price, and from thence until the 8th of March, 1866,
was at all times ready to pay the same. However strongly
this evidence may have tended to prove that Jones entered
in good faith in 1863, it could not have benefited the plaint-
iff, who claims under a deed made by Jones to Mary Anna
Cook in August, 1863, and who is alleged to have been in
the *bona fide* actual possession on the 8th of March, 1866.
Whatever rights Jones had or supposed he was entitled to
as a pre-emptioner, when he originally entered or after-
wards, can avail nothing to Mary Anna Cook, who was then
a child between seven and eight years of age, living with
her father, and who, of course, was not a qualified pre-
emptioner. Whatever possession she pretends to have had
was derived from Jones, and it is not claimed that in taking
possession she or her father had any idea of attempting to
pre-empt the land at any time. Even if Jones had a valid
right of pre-emption when he entered, he lost it as to this
parcel when he conveyed it to Mary Anna Cook, who was
incapable of pre-empting it. Her possession was not
strengthened as against those who had the prior possession,
by the fact that when Jones entered, he supposed in good
faith, that the land was subject to pre-emption. When he
parted with the possession and the right of possession, to a
person incapable of pre-empting it, the land was thence-
forth liberated from any pretence that it was held or claimed
for the purposes of pre-emption, and the possession became

and was thenceforth tortious as against those who had the actual possession prior to Jones. The excluded evidence, therefore, did not tend to prove, as against the defendants, the *bona fides* of the possession alleged to have been held by Mary Anna Cook on the 8th of March, 1866. In *Leroy* v. *Cunningham*, 44 Cal. 599, we had occasion to consider what is meant by the term *"bona fide* possession," in a similar statute; and we held it to mean a possession which was *bona fide* as against adverse claimants, and not as against the Government; or, in other words, a possession taken and held in good faith, and not tortious as against a prior possessor. As between Mary Anna Cook and the defendants' grantors, the evidence tends strongly to prove, and the jury was fully justified in finding, that her possession, such as it was, was not *bona fide*. We discover no error in the instructions to the jury, and deem it unnecessary to notice the other points suggested by counsel.

Judgment affirmed.