SCHNEPEL, appellant, *v.* MELLEN, respondent.

COMPUTATION OF TIME. In cases arising under statute or notice given in accordance with statute, where the last day on which a required act can be performed falls on Sunday, the act may well be done on the following day.

RATIFICATION. The act of an unauthorized agent only becomes the act of the principal after ratification upon full knowledge, so far as the intervening rights of third persons are concerned.

TOWN SITE ACT — *filing statement of claim — forfeiture.* The Town Site Act of Montana provides for no forfeiture for failure to file statement of claim within the time limited in notice of entry by probate judge or corporate authorities ; such statement may well be filed subsequently. The case is analogous to those arising under the U. S. Pre-emption Laws.

TOWN SITE ACT — *possession and occupancy.* Actual possession and occupancy required as preliminary to making statement of claim and proof thereunder must be open, notorious, apparent, unequivocal, uninterrupted and exclusive ; carrying with it dominion of claimant as against all other persons, with evidence of ownership visible to all the world, and not be simply a temporary and partial occupancy of a bare trespasser.

TOWN SITE ACT — *trust.* The probate judge or corporate authorities under the Town Site Act of Montana are only the trustees of such as by occupancy and possession as above defined are entitled to make a valid statement of claim.

*Appeal from Second District, Deer Lodge County.*

THE facts of the case are included in the opinion of the court.

J. C. ROBINSON, for appellant.

The probate judge under the law is trustee for occupant alone. The trust is created by act of congress and must conform thereto. U. S. Rev. Sts., §§ 2387–2391.

The act of congress was not intended to deprive a *bona fide* occupant of his rights. *Ricks* v. *Reed*, 19 Cal. 566; *Jones* v. *Petaluma*, 38 id. 399; *Allemany* v. *Same*, id. 556; *LeRoy* v. *Cunningham*, 44 id. 602. The foregoing cases are under an act of congress similar to that of 1867, under which the probate judge was acting in present case and the authorities are in point as to who are the beneficiaries named. To same point see *Edwards* v. *Tracy*, 2 Mont. 50; Cod. Sts. of Mont. 547, § 1. Sections 6 and 8 of same statutes designate who are entitled to file prior to public sale. The right is confined to occupants, and respondent was not an occupant within the meaning of the law. He was only a trespasser on another's possession.

As to what constitutes possession see Cod. Sts. 516, § 7; *Le Roy* v. *Cunningham*, 44 Cal. 602; *Gray* v. *Collins*, 42 id. 156; *Brumagim* v. *Bradshaw*, 39 id. 24; Tyler on Ejectment, §§ 888–891, 899, 900, 904, 905. The affidavit in this is in due form but false in fact.

Appellant was entitled to file by reason of the value of his improvements and undisputed possession since 1868.

The filing of appellant was within the prescribed time, counting from the ratified act of L. W. O'Bannon. A party entitled to file has until the time unclaimed lots are advertised to be sold, to make such filing. See § 16, Town Site Act; Cod. Sts. Mont., 547; *Shaw* v. *Randall*, 15 Cal. 386; *Tuohy* v. *Chase*, 30 id. 527; *People* v. *Lake County*, 33 id. 487; Sedg. on Stat. Const. 368, 370, 376.

If statute does limit filing to sixty days, respondent was not in time, if he had any right to file at all. The time expired August 18, and not on August 20, as stated in notice; but if on the 20th as that was Sunday, it must have expired on Saturday, 19th, the day previous. *Bissell* v. *Bissell*, 11 Barb. 96; 1 Wend. 42; *Ex parte Dodge*, 7 Cow. 147; 17 N. Y. (3 Smith) 502. The provision on this subject in the Practice Act is confined thereto.

Either appellant had right to file, or the lot should have been treated as unclaimed, to be disposed of at public sale.

W. W. DIXON, for respondent.

1. The laws for disposal of town lots, both of the United States and of the Territory, are analogous to the pre-emption laws, and the same principles of construction should apply.

The claimant of land or lot must comply with the law in time and manner of filing or he loses his right.

The decision of the land department and courts agree that a party failing to file his claim within time required loses his rights if another claim intervenes. 1 Lester's Land Laws, 444; Copp's Pub. Land Laws, 289 *et seq.*, and 409; *Johnson* v. *Towsley*, 13 Wall. 72. Courts have no power to dispense with requirements of act of congress. *Megerle* v. *Ashe*, 23 Cal. 74; *Damrell* v. *Meyer*, 40 id. 166; *Poppe* v. *Athearn*, 42 id. 606; *Megerle* v. *Ashe*, 47 id. 632 ; *Carpenter* v. *Sargent*, 41 id. 557; *Borland* v. *Lewis*, 43 id. 569.

Claimant of town lot must file within time prescribed. *Cofield* v. *McClellan*, 1 Col. 372.

2. Respondent entered on lot in dispute August 21, 1876; did some work, and on same day filed statement in due form. See agreed statement of facts. These points cannot now be controverted. Whether it was a case of trespass is immaterial.

The case of *Edwards* v. *Tracy*, 2 Mont. 49, differs in this, that there was no occupation or possession.

Appellant lost his right to the lot by failing to file within required time, and respondent's claim intervened.

3. Requirement to file within time limited is mandatory and not directory, otherwise it amounts to nothing. See authorities cited above. The provision is analogous to mining laws requiring work to hold a claim ; if work is not done the claim is forfeited, if third person takes advantage of it, though the law may not expressly say so. *King* v. *Edwards*, 1 Mont. 235.

4. Respondent filed August 21, 1876. It is agreed that the notice of the probate judge was sufficient, in due form, pursuant to and in accordance with law. Appellant claims his filing Aug. 21, and that it was within the time.

The rule of Civil Practice Act should apply in computing time and when the last day falls on Sunday, the day following is in time. 2 Pars. on Cont. 666 ; 6 Abb. N. Y. Dig. 139, § 132.

5. If neither appellant nor respondent filed in time, the claim of respondent is best, he having filed first. Cod. Sts. 550; Town Site Act, § 16.

6. Appellant's filing only dates from Aug. 22, when he ratified act of L. W. O'Bannon, and this was too late by any possible construction.

*Quere*, can agent without written authority make application contemplated by Town Site Act.

The act of ratification must occur at time and under circumstances when principal might have lawfully done the act ratified. 1 Pars. on Cont. 45, note and authorities cited; 2 Kent, 450, note; Story on Agency, §§ 244–6.

The law will not admit the ratification of agent's acts to defeat intervening rights of third party. *Stoddard* v. *U. S.*, 5 Abb. N. Y. Dig. 391, § 9 ; *Taylor* v. *Robinson*, 14 Cal. 396 ; *Mc-Cracken* v. *San Francisco*, 16 id. 624. And see *Cook* v. *Tullis*, 18 Wall. 332.

Respondent is entitled to the lot by compliance with the law. Appellant lost his rights by his own laches for which no excuse is offered, and therefore judgment of the court below should be affirmed.

Wade, C. J. This action was instituted to quiet the title to a certain lot in the town of Philipsburg, in the county of Deer Lodge, and was submitted to the court and determined upon the following agreed statements of facts.

1. That the plaintiff and defendant are now and were at the times hereinafter mentioned citizens of the United States, over twenty-one years of age, and residents and inhabitants of the town of Philipsburg in Deer Lodge county, Montana Territory.

2. That at the times hereinafter mentioned, O. B. O'Bannon was and now is the duly qualified and acting probate judge of said Deer Lodge county, Montana Territory.

3. That about the first day of June, A. D. 1876, the land on which the town of Philipsburg, Deer Lodge county, Montana Territory is situated (then being on public lands of the United States, and said town of Philipsburg being then and now not an incorporated town), was duly and regularly entered in the United States Land Office at Helena, Montana Territory, by said O. B. O'Bannon, probate judge of said county of Deer Lodge, under and by virtue of the act of congress of the United States relating to town sites on public lands, approved March 2d, 1867, and entitled : " An act for the relief of the inhabitants of cities and towns upon the public lands," and the acts of congress amendatory to said act or relating to said matter of town sites, and said entry was duly allowed, as entry of the town site of said town of Philipsburg, and afterward a patent therefor from the United States to said probate judge was duly issued.

4. That lot No. three (3) in block No. seven (7) in controversy in this case is within and included in said town site of said town of Philipsburg, entered as above mentioned, and is one of the regularly laid off and surveyed town lots thereof.

5. That after the entry of said town site as above mentioned, the said O. B. O'Bannon, probate judge as aforesaid, in pursuance of, and in accordance with, section five (5) of chapter fifty-eight (58) of the Codified Laws of Montana Territory, approved January 12, 1872, on page 548 thereof, in the law relating to town sites, gave, posted and published due notice as required by said section 5, of said entry of said town site, and requiring any claimant of any town lot or lots in the town of Philipsburg to file in the office of the probate judge of the county a statement of his or their claims on or before the 20th day of August, 1876 ; that the first publication and posting of said notice was on the 19th day of June, 1876 ; that said notice was given in the manner and for the length of time required by law, and was in accordance therewith ; and that the 20th day of August, 1876, was a Sunday.

6. That the lot in controversy in this case has been actually possessed by the plaintiff herein since the year 1868, and that he had on said lot, improvements to the value of about $600, and that plaintiff's right and possession were not disputed by de-

fendant herein, prior to the 21st day of August, 1876, nor did the defendant claim the lot before that time.

7. That on the 21st day of August, 1876, and before any application to enter the lot in dispute had been made, or any statement of claim thereto had been filed by any one, the defendant made application to the probate judge to enter said lot, and immediately thereafter entered upon said lot in dispute, and dug some post holes thereon, and afterward on the same day, to wit, on the 21st day of August, 1876, did make and file with the probate judge, in due form of law, his application to enter, and statement of claim to said lot, which was duly received and filed by the probate judge, and the lawful fees therefor paid by the defendant, and that the proceedings above mentioned were the first claim or right made by the defendant to said lot.

8. That on said 21st day of August, 1876, and between the time when the defendant made application to enter said lot and the time when he filed his statement of claim thereto, as above mentioned, one L. W. O'Bannon, assuming to act as agent of and for and on behalf of plaintiff herein, and in plaintiff's name, filed with the probate judge the application to enter and statement of claim of the plaintiff to the lot in dispute, which was in due form, and was duly received and filed by the probate judge, and the fees therefor duly paid to the probate judge.

9. That at the time of making this application, and filing the statement of plaintiff's claim to the lot by said L. W. O'Bannon, as above recited, he had been in no manner authorized or empowered by the plaintiff to make said application, or to file said statement of claim, but that O'Bannon, in so doing, acted on his own motion and without the authority or knowledge of plaintiff, and that O'Bannon so stated to the probate judge.

10. That on the 22d day of August, 1876 (being the next day after the filing of said O'Bannon and defendant on said lot), plaintiff was for the first time informed by said L. W. O'Bannon, of what said O'Bannon, assuming to act as agent for plaintiff, had done the day previously as to filing statement of claim to the lot in dispute, and plaintiff thereupon, on said 22d day of August, 1876, approved and ratified the acts of said O'Bannon.

11. That the contest between the parties as to said lot was afterward heard before the probate judge, who awarded the lot to the defendant.

There was an appeal to the district court, where the action of the probate judge was affirmed, and a judgment and decree entered in favor of defendant, giving him the ownership and possession of the lot in question. From this judgment and decree the plaintiff appeals to this court.

The law of congress in relation to town sites on the public domain, referred to in the statement of facts, is found in the Rev. Sts. of the U. S., p. 439, § 2387, and is as follows :

"Whenever any portion of the public lands have been or may be settled upon and occupied as a town site, not subject to entry under the agricultural pre-emption laws, it is lawful, in case such town site be incorporated, for the corporate authorities thereof, and if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests ; the execution of which trust as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated."

In pursuance of this act of congress and to give effect to the same, our legislature enacted a statute on the subject of town sites situate upon the public lands and providing the means whereby the inhabitants of such town sites might acquire title to the lands therein occupied and possessed by them. Cod. Sts. 547.

Section 1 of this act provides for the entry of the land occupied as a town, in the land office, by the corporate authorities of the town, or the probate judge of the county, in trust for the several use and benefit of the occupants of such land, according to their respective interests. Section 2 empowers the corporate authorities or the probate judge to perform the several acts and things necessary and appertaining to the entry of such

land in the proper land office.  Section 3 provides for the survey of such town site which shall conform as near as may be to the existing rights and claims of the occupants.  Section 4 designates what the plat and survey shall contain : as what blocks, streets and alleys.  And section 5 is as follows :

"Immediately after such survey and plat has been filed, or if such survey and plat has been made previous to the entry, according to the provisions of section *three* of this act; then immediately after the entry of the lands at the proper land office, as provided in the first section of this act, the corporate authorities or the probate judge, as the case may be, shall cause a notice to be published in all the newspapers published in such town, or if no newspaper be published in such town, then by advertisement posted up in twelve of the most public places in such town for at least two months, giving notice of such entry, and requiring every claimant or claimants of any town lot or lots, to file in the office of such corporate authorities or probate judge, as the case may be, a statement of his or their claim, within two months from the date of the first publication of such notice."

Section 6.  "Such statement shall be made in writing, signed by the party or parties making the same, and verified by the affidavit of such party or parties, and shall be recorded at length in a well-bound book to be provided and kept for such purpose. by such corporate authorities or probate judge, as the case may be. Such statement shall specify the ground of such claim, particularly describing the lot or lots claimed, the date, as near as may be, of the occupation of such lot or lots, and by whom ; what improvements have been made on said lot or lots, and the value thereof ; and that such lot or lots are now actually possessed and occupied by such claimant, or that the right to such occupation is in the claimant, if such lot or lots are occupied by another."  Then follow sections of the act providing for the proof of the matters contained in the statement of the claimant; the number of lots any one claimant may pre-empt under the act ; for awarding deeds to the claimants by the corporate authorities or probate judge when the proof sufficiently establishes the claim ; for hearing contested cases where there is a dispute as to the right to a deed, and for appeals to the district court.

Then follows section 16 in these words : "The residue of lots in the possession of the corporate authorities or probate judge as the case may be, and unclaimed after the expiration of sixty days, it shall be the duty of the probate judge or corporate authorities, as the case may be, to post up notices, or cause the same to be done, in at least four public places in the county in which such town site is located, at least ten days before sale, that he will offer and sell at public sale all of, or so many as he may think proper, of the lots that may remain unclaimed at the time advertised," etc.

1. The act of congress confides to the local legislatures the trust of enacting such laws as will carry into execution the purpose of the government as declared in the act, and afford the relief proposed, and no question is made as to the validity of our legislative enactment on the subject. The first question then arising under these statutes and the agreed statement of facts herein which we will consider is, as to when the time expired for a claimant to file his statement of claim to a lot under the notice as given, of the entry of the town site in the land office by the probate judge. The statute requires two months' notice of the entry. In this case the first publication was on the 19th of June, 1876, requiring claimants to file their statement of claim on or before the 20th day of August, 1876, which 20th day of August was Sunday. Did the time for filing such statement, under the notice, expire on Saturday, the 19th, or on Monday, the 21st of August ? The general rule for the computation of time in cases of this description undoubtedly is that where the last day in which the required act can be performed falls on Sunday, the act may be well done on the following day. Sunday is excluded from the count. In the case of *Goewiler's Estate*, 3 Pen. & Watts, 200, the court say : "Without recurring to all the decisions on the subject of computation of time, it may be sufficient to say, that whenever by rule of court or an act of the legislature a given number of days are allowed to do an act, or it is said that an act may be done within a given number of days, the day in which the rule is taken or the decision made is excluded, and if one or more Sundays occur within the time, they are counted unless

the last day falls on Sunday, in which case the act may be done on the next day."

"When days of grace are allowed on a bill or note and the third day falls on Sunday, the bill or note is payable on the previous Saturday. The same custom of merchants, which as a general rule allows three days of grace to a debtor, has limited that indulgence to two days in those cases where the third is not a day for the transaction of business. But when there are no days of grace, and the time for payment or performance specified in the contract falls on Sunday, the debtor may, I think, discharge his obligation on the following Monday. This question was very well considered in *Avery* v. *Steward*, 2 Comst. 69, which was an action on a note not negotiable, which fell due on Sunday, and the court held that a tender on Monday was a good bar to the action. I agree to the doctrine laid down by GOULD, J., that Sunday cannot for the purpose of performing a contract be regarded as a day in law, and should, as to that purpose, be considered as stricken from the calendar. In computing the time mentioned in a contract for the performing of an act, intervening Sundays are to be counted, but when the day of performance falls on Sunday, it is not to be taken into the computation. *Salter* v. *Burt*, 20 Wend. 204." "Where the rule to plead expires on Sunday, the defendant has the next day in which to plead. Where the last day is Sunday, that is to be rejected. *Cock* v. *Bunn*, 6 Johns. 325." See, also, *Campbell* v. *Int. Life Ins. Soc.*, 4 Bosw. 298; 2 Pars. on Cont. 666; *Hammond* v. *Am. Mut. Life Ins. Co.*, 10 Gray, 306.

We hold, therefore, that the statement of claim to the lot in question was, under the notice, in time, if made on Monday, the 21st day of August.

2. The claim of the defendant was filed with the probate judge on Monday, the 21st day of August. Subsequently and on the same day, O'Bannon, the unauthorized agent of the plaintiff, on his own motion and without the knowledge of plaintiff, filed a claim with the probate judge on behalf of the plaintiff, which act of O'Bannon was, on the 22d day of August, approved and ratified.

When did the act of O'Bannon become the act of plaintiff? Clearly not until plaintiff had after full knowledge ratified the act. One man can only be bound by the authorized acts of another or by the ratification of unauthorized acts. And such ratification must take place at such a time, when it would have been lawful for the party so ratifying the act to have performed the act himself. And if between the time of performance of the unauthorized act by the agent, and its ratification by the principal, the rights of third parties intervene, such rights are not defeated by the ratification. It follows, therefore, that the filing of plaintiff's statement of claim did not take place until the 22d day of August, which day was outside of and beyond the time mentioned in the notice.

3. What consequences follow this omission of the plaintiff to act within the time designated in the notice? The statute declares no forfeitures in consequence of the failure to file statement of claim within the time prescribed. Such failure authorizes and empowers the probate judge or corporate authorities, if they think proper, to advertise and sell the unclaimed lots. They can advertise and sell, or not, in their discretion; it they do not, then there is nothing in the act to forbid any one entitled, making and filing his statement of claim, after the expiration of the two months' notice of entry of the town site for a patent. If a lot is not claimed within the time prescribed, it becomes subject to claim by a third person as a vacant lot, but if the rights of no third persons intervene, we can see nothing in the statute to prevent a claimant, who was in the possession and occupancy of his lot at the time the notice was given, from making his claim after the expiration of such notice. The purpose of the act of congress and of the legislature was to secure to the *bona fide* occupant, that is to say to the *equitable* owner, a title to the lot in his possession. The title to the town site was conveyed by the government to the probate judge in trust for this sole purpose, and this trust should be performed in its letter and spirit, unless this equitable owner and occupant, by his neglect to do the act required, has thereby secured rights and equities to third persons that cannot be disturbed. In the absence of any such interven-

ing rights, and the statute nowhere forbidding it, and the purpose of the law being to secure to the equitable owner his title, we think such owner, under such circumstances, entitled to make and file his statement of claim, and to receive a deed to his lot after the expiration of the time named in the notice. A reference to the pre-emption laws of the United States, and their interpretation by the courts, warrants the conclusion to which we have arrived. Our Town Site Act, made in pursuance of the act of congress, is in fact a pre-emption law, and in many respects is analogous to the general pre-emption laws. Hence the interpretation of the general laws is authority for the construction to be put upon the act in question. Section 5 ot the Pre-emption Act of 1843 (5 Sts. at Large, 620) provided that claimants under the late pre-emption law for land not yet proclaimed for sale, are required to make known their claim, in writing, to the register of the proper land office, *within three months from the time of settlement*, giving the designation of the tract and the time of settlement, *otherwise his claim to be forfeited*, and the tract awarded to the next settler in the order of time on the same tract of land, who shall have given such notice, and otherwise complied with the conditions of the law. In the case of *Johnson* v. *Towsley*, 13 Wall. 72, it was argued that as Towsley had neither filed, nor offered to file, his declaratory statement within the three months from the time of his settlement upon the land, as required by section 5, his claim as a pre-emptor thereby became forfeited. It was further argued, that if, after having occupied the land nearly a year, he was at liberty to file a declaratory statement, asserting his settlement to have been within three months, then he could occupy the land indefinitely, and need never file his declaratory statement, and the law requiring him to do so within three months became nugatory. A similar arrangement was made in the case at bar, that if the claimant of a town lot was not required to make his statement of claim within the time provided in the notice, then the statute became inoperative, and the claimant might not only refuse to procure a title himself, but could prevent any other person from so doing. But, notwithstanding the

VOL. III — 17

argument in the case cited, the court, by Miller J., in deciding the question, used the following language:

"The record shows that his (Towsley's) settlement commenced about eight months before he filed his declaration, and it must be conceded that the land was of that class which had not been proclaimed for sale, and his case must be governed by the provisions of that section. It declares that where the party fails to make the declaration within the three months his claim is to be forfeited, and the tract awarded to the next settler in order of time on the same tract who shall have given such notice and otherwise complied with the conditions of the law. The words, 'shall have given such notice,' presuppose a case where some one has given such notice before the party who has thus neglected seeks to assert his right. If no other party has made a settlement, or has given notice of such intention, *then no one has been injured by the delay beyond three months, and if, at any time after the three months, the party is still in possession, he makes his declaration, and this is done before any one else has initiated a right of pre-emption by settlement or declaration, we can see no purpose in forbidding him to make his declaration, or in making it void when made.* And we think that congress intended to provide for the protection of the first settler, by giving him three months to make his declaration, and for all other settlers, by saying if this is not done within three months, any one else who has settled on it within that time, or any time before the first settler makes his declaration, shall have the better right. As Towsley's settlement and possession were continuous, and as his declaration was made before Johnson or any one else asserted claim to the land or made a settlement, we think his right was not barred by that section, under a sound construction of its meaning."

This is the construction put upon the fifth section of the Pre-emption Act by the supreme court of the United States, notwithstanding the fact that the section declares a forfeiture in case the settler fails to file his declaratory statement within three months from the date of settlement. It will be seen by this decision that when there is no adverse claim, and no intervening

rights to be affected thereby, then there is no purpose accomplished by a forfeiture, and if not, the declaratory statement may be made at any time after the three months have expired. If the first settler neglects to file his declaratory statement as required, then the tract of land upon which he has settled shall be awarded to the next settler in order of time, on the same tract, but if there is no settler other than the first, then the failure to file the declaratory statement within the three months works no forfeiture, and in such a case it may be filed after the three months.

The declaratory statement in the pre-emption, and the statement of claim in the Town Site Act, have for their object the same purpose and mean the same thing. If the declaratory statement may be filed after the expiration of the three months, then the statement of claim may be filed after the two months' notice has expired. If the failure to make the declaratory statement works no forfeiture of the land, saving as to some person who has settled and filed upon the same tract, then the neglect to make the statement of claim to a town lot, within the two months, does not forfeit the claimant's right thereto, saving as to some other person who has complied with the law in making his claim to the same lot. Neither the Pre emption Act, nor the Town Site Act, were intended as acts of forfeiture, but they were designed to secure to and protect each actual settler and occupant in the enjoyment of the property settled upon and possessed by him. And while continuing so to occupy and possess the lands settled upon in good faith, the claimant ought not to be disturbed in his rights by failing to take the necessary steps to acquire a title from the government, so long as such failure does not in any manner injure or affect the rights of any other person.

4. Had the rights of the defendant so attached to the lot in question by occupation and possession, that the plaintiff had lost his right to file his statement of claim, after the expiration of the two months' notice?

The agreed statement of facts shows that on the 22d day of August, 1876, the plaintiff ratified the act of O'Bannon in filing statement of claim to the lot, and that for eight years prior thereto the plaintiff had been in the peaceable possession and

occupation thereof, and had placed improvements thereon to the value of $600. The statement further shows that while the plaintiff was so in possession and occupancy of the lot, on the 21st day of August, 1876, the defendant entered upon the lot and "dug some post holes thereon," and thereupon, on the same day, filed his statement of claim to the lot, and by reason of such act was afterward awarded the title thereto. The statement of facts shows that the sole right of the defendant to the lot rests upon the following facts: that while the plaintiff was in the possession and occupancy of the lot, and his improvements thereon, the defendant, upon the last day in which statement of claims by the terms of the notice could be filed, entered upon the lot and "dug some post holes," and thereupon immediately filed his statement of claim ; and the further fact that the plaintiff failed to ratify the statement of claim made and filed in his behalf until the next day after the time for filing of claims had, by the notice, expired.

Having shown that the plaintiff had the right to make his claim to the lot after the expiration of the notice, provided the rights of no person were thereby infringed, the question now is, had the rights of the defendant so attached to the lot, and had he so far complied with the law as to justify his claim thereto, and to defeat the right of the plaintiff to make his claim after the expiration of the notice ? By virtue of the defendant having "dug some post holes" on the lot, which at the time was in possession and occupancy of the plaintiff, did the probate judge thereby become the trustee of the defendant, as of a person in the possession and occupancy of the lot, whereby the trustee was required to make him a deed thereof ? It appears, from the statement of facts, that the defendant, some time during the day or night of the 21st day of August, 1876, committed a trespass upon the property of plaintiff by "digging some post holes thereon," and then immediately hastened to the probate office and made his statement of claim. Do these acts of possession and occupancy on the part of defendant authorize him, under the law, to make and file a claim to the lot ? It cannot be supposed that the act of congress or of the legislature intended to authorize a mere trespasser, having

neither of the qualifications of occupancy or possession, to steal a lot, and we are therefore remitted to a solution of the question as to what constitutes occupancy and possession under the Town Site Act and the act of congress. The act of congress declares that the probate judge shall hold the lots in trust for the several use and benefit of the occupants thereof, according to their respective interests, and the sixth section of the act of the legislature provides, when defining what the statement of claim shall contain, and consequently what proof the claimant shall make, as follows: "Such statement *shall specify the grounds of such claim,* particularly describing the lot or lots claimed, the date as near as may be of the occupation of said lot or lots and by whom; what improvements have been made on said lot or lots and the value thereof; *and that such lot or lots are now actually possessed and occupied by such claimant,* or that the right to such occupation is in the claimant, if such lot or lots are occupied by another." Section 7 of the act provides that the claimant shall within six months after the expiration of the notice, make proof of his claim, and of the facts contained in his statement.

According to the agreed statement of facts, the proofs that the claimant, the defendant, could submit under the seventh section would be the following : First, as to the nature of his claim, the proof would be that he had entered upon the lot of plaintiff, and "dug some post holes thereon," and immediately left the premises. Second, as to the date of his occupation, the proof would show that to have been some time during the 21st day of August, 1876, being the same day upon which he entered upon the lot and "dug some post holes." Third, as to the occupation, the proof would show that it had been in the quiet and undisputed occupation of the plaintiff for eight years next prior to the 21st day of August, 1876, and was so in his occupation on that day, unless the fact that sometime during that day the defendant entered upon and "dug some post holes thereon," transferred the occupation and possession from the plaintiff to the defendant. Fourth, as to the proof of improvements on the lot, by the defendant, and their value, reference would again be had to the "post holes," and the probable cost of digging the

same.    And, Fifth, as to the proof of the fact that at the time of making his statement of claim, the defendant was in the actual possession and occupation of the lot, the testimony would show the entry 'on the lot· by· the defendant and the digging of some "post holes thereon," and the immediate abandonment of the lot for the probate office.

The imperative requirement of the statute is that the proof shall show that the claimant, at the time of filing his statement of claim, was in the *actual occupation* and possession of the lot claimed.    Upon such occupation and possession rests his right to the equitable ownership of the property, and only by virtue of these two elements of title, does the probate judge become the trustee of the claimant, with authority to make him a deed. No trust arises or is created unless an equitable ownership is shown, and the statute declares that such ownership shall be evidenced by actual occupation and possession.

What, for the purposes of this act, is the meaning of the words, "actual possession and occupation?"    The supreme court of California has many times defined the meaning of these words, when used in acts similar to our Town Site Act.    In the case of *Coryell* v. *Cain*, 16 Cal. 573, the court defined actual possession to be, "a subjection to the will and dominion of the claimant and it is usually evidenced by occupation, by a substantial inclosure, by cultivation or by appropriate use according to the particular locality and quality of the property."    This authority defines actual possession, but our act requires not only actual possession but also *actual occupation ;* and in the case of *Wolf* v. *Baldwin*, 19 Cal. 313, the court declares the meaning of these words, and says, in speaking of the "actual occupation" required under the Van Ness ordinance, that it was a "possession which is accompanied with the real and effectual enjoyment of the property.    It is the possession which follows the subjection of the property to the will and dominion of the claimant to the exclusion of others ; and this possession must be evidenced by occupation or cultivation, or other appropriate use according to the locality and character of the particular premises."    *    *    *    "It must, in other words, be an open, unequivocal, actual possession ; notorious, apparent,

uninterrupted and exclusive, carrying with it marks and evidence of ownership, which apply in ordinary cases to the possession of real property."

To the same effect is the case of *Le Roy* v. *Cunningham*, 44 Cal. 599, where the court construes the same words in a grant by congress of "Point San Jose Military Reservation," to the city of San Francisco, in trust for the occupants.   See, also, *Gray* v. *Collins*, 42 Cal. 156 ; *Brumagim* v. *Bradshaw*, 39 id. 24 ; Tyler on Ejectment, 894 *et seq.*

It would, therefore, seem that actual occupation and possession of a town lot under our Town Site Act, in order to entitle the claimant to hold the same, must be such as is open, unequivocal and actual; it must be notorious, apparent, uninterrupted and exclusive.   It must, in other words, be such an occupation and possession as openly asserts the right and dominion of the claimant over the property as against each and every other person.   It must be such an occupation as carries with it the evidence of ownership ; something that can be seen, something that asserts itself to all the world.

The defendant's "post holes" dug upon the plaintiff's property without his knowledge, and apparently without the knowledge of any person, saving only himself, does not constitute such an unequivocal, open, notorious and exclusive possession of the lot as to authorize him to claim the same as an occupant.   These acts of the defendant do not so contain the elements of occupation and possession as to authorize him to claim the property as against one who at the time of such acts was, and for many years prior thereto had been, the apparent owner and possessor of the property.   There was nothing in the acts of the defendant to show that the lot had been subjected to his will and dominion to the exclusion of others, and especially not to the exclusion of the plaintiff, who, notwithstanding the acts of the defendant, remained the apparent owner and occupant of the property.   If the lot had been vacant, unclaimed and unoccupied, then the entry and acts of the defendant would perhaps have been sufficient to have authorized him to make and file a statement of claim, but the lot being at the time in the actual occupation and possession

of the plaintiff under a claim of right, and as the equitable owner, it was necessary for the defendant to make his possession and occupation an actual, unequivocal, open, notorious fact, accompanied with the usual and ordinary evidences of dominion and exclusive ownership, before he became entitled to set up his claim. The statement of claim by the defendant was then a mere nullity. No rights of his attached to the lot thereby. The probate judge did not become his trustee, holding the title in trust for his benefit, and hence there was nothing in the acts of defendant to prevent the plaintiff making a valid claim to the lot after the time limited in the notice.

The case of *Cofield* v. *McClellan et al.*, 1 Col. 372, referred to in respondent's brief as an authority upon the proposition that the failure to make statement of claim within the time limited forfeits the right, is not parallel to the case we have considered, neither as to the law under which it arose, nor as to the facts by which it was controlled. The Colorado act, under which the city of Denver was entered, declared that all persons failing to deliver the statement of claim within the time specified should be forever barred the right of claiming or recovering the property claimed. There is no such provision in our act, and the facts in the case show that for years prior to the date of the deed from the probate judge to the defendant's grantors, neither the plaintiff nor his grantors had been in possession of the lot in dispute. It appears that on the 11th day of August, 1865, the probate judge conveyed the lot in question to Mary McClellan, who subsequently conveyed to the defendant, Mary Davis. In April, 1869, the plaintiff, having failed for nearly five years to set up any claim to the lot, commenced an action to recover the same, and rested his claim upon the fact that in the year 1859, one Preston erected a cabin on the premises, and in the same year conveyed to one Hall, who by tenants occupied the cabin at different times down to about 1862, and from 1862 to 1865, when the probate judge conveyed to the defendant, neither the cabin nor the premises appear to have been occupied by any one. In 1866, more than a year after the conveyance by the probate judge, Hall, not being in possession of the cabin or premises, conveyed

the same to one Felter, and subsequently Felter to Bates, and Bates to the plaintiff in 1869, who, in that year, commenced the action to recover the premises. Under these facts the case is not an authority upon any of the propositions we have considered. It therefore appears that the defendant Mellen made his statement of claim with no right or equity whatever upon which to rest the same, and we hold that a claim so made is void, and cannot defeat or in any manner affect the rights and equities of a *bona fide* occupant, who for years had possessed and improved his lot, even though he had failed for a few hours to bring himself within the time limited in the notice. Mellen made his claim while yet the right remained in the plaintiff to make his claim to the lot under the notice, and if by occupancy and possession of the property, the right was with the plaintiff, it necessarily follows that the defendant was not entitled to claim, for a lot cannot be so occupied and possessed by two hostile and adverse claimants, as rightfully to entitle each of them to make and file a statement of claim at the same time. And if Mellen had no right to claim when he made his statement; if his act were void in its inception, nothing subsequently occurred to ripen or perfect his claim or to give vitality to his act and make it valid.

The judgment is reversed, and the cause remanded with directions to the district court to enter a decree herein in conformity with the views expressed in this opinion.

KNOWLES, J. I concur in the conclusion arrived at.

*Judgment reversed.*