## MING, RESPONDENT, *v.* FOOTE, APPELLANT.

9  201
e28  106
28  110

PROBATE JUDGE AS TOWN-SITE TRUSTEE — *Ministerial or judicial officer — Townsite lots.* — An act of Congress provides for the transfer of the title to a town site to the probate judge of the county wherein such town may be situated, in trust for its occupants. Under the laws of the late Territory, passed to give effect thereto, such probate judge is charged with certain duties which involve the hearing and consideration of testimony concerning the rights of claimants to any lots, and passing upon its competency, credibility, and weight, and which also involve judicial trials before him in certain instances, wherein he is required to render judgments, from which appeals may be prosecuted to the Supreme Court of the Territory. *Held,* that the trust position of the probate judge in these matters is *quasi*-judicial. (*Ming* v. *Truett,* 1 Mont. 325, overruled; *Edwards* v. *Tracy,* 2 Mont. 49; *Schnepel* v. *Mellen,* 3 Mont. 118; *City of Helena* v. *Albertose,* 8 Mont. 499, reviewed and distinguished.)

SAME — *Judgment, when conclusive.* — The deed of a probate judge, of lots in the town site of which such judge is the trustee, is conclusive when brought to notice in a collateral proceeding, and is unassailable in the legal action of ejectment, where no equitable defense or cross-demand is set up.

EJECTMENT — *Deed from a probate judge — Presumption of regularity.* — Where a deed from a probate judge is relied upon for title in an action of ejectment, it is entitled to the presumption of regularity in its favor, as against the defendant claiming under an alleged deed from the same source of title issued fifteen years later, without affirmative proof of the preliminary steps conferring authority to make the grant.

DEED — *Consideration.* — The consideration upon the face of the deed is not conclusive.

SAME — *Execution.* — It is no objection to a deed from a probate judge that the grantor described himself in the deed as "N. Hilger, Probate Judge of Lewis and Clarke County, Montana Territory," and executed it, "N. Hilger, Probate Judge."

SAME — *Description.* — A description of lots in a town site, which has been officially platted and surveyed by the lot and block number, is a sufficient description of the *locus in quo.*

PLEADING—*Allegations and proof.*—Where the answer did not allege that the premises claimed by the defendant were located elsewhere than those described in the complaint, evidence offered by the defendant that the location of the lots described in the complaint was geographically different from the lots described by the same designation in the defendant's answer, was properly excluded.

*Appeal from First Judicial District, Lewis and Clarke County.*

The action was tried before BLAKE, C. J., without a jury.

*Comly & Foote,* for Appellant.

In ejectment, after pleading general issues, defendant need not set up title in himself. (*Bruck* v. *Tucker,* 42 Cal. 346.) It devolves upon one who depends for title upon a town-site trustee's deed, to show by affirmative proof that all of the prerequisites for obtaining or granting a deed have been complied with, especially in case where the deed does not show upon its face, or the records do not show, that the town-site laws, rules, and regulations made by the legislature, under authority of the laws of Congress, have been complied with. (*Edwards* v. *Tracy,* 2 Mont. 59; *City of Helena* v. *Albertose,* 8 Mont. 499.) Allegations of matters of evidence in a pleading are not issuable facts. If the answer puts in issue the ultimate facts resulting from the evidence, it is a sufficient defense. (*Moore* v. *Murdock,* 26 Cal. 524; *Racouillat* v. *Rene,* 32 Cal. 450.) In California, under their system of practice, a general denial is equivalent to the general issue. (*Brooks* v. *Chilton,* 6 Cal. 640; *Glazer* v. *Clift,* 10 Cal. 303; *White* v. *Moses,* 11 Cal. 69.) And under a general denial in an action of ejectment, the defendant has a right to introduce in evidence any facts which might show, or tend to show, that the plaintiff had no right to entry when the suit was brought. (*Kimball* v. *Gearhart,* 12 Cal. 50; *Bell* v. *Brown,* 22 Cal. 672; *Willson* v. *Cleveland,* 30 Cal. 201; *Marshall* v. *Shafter,* 32 Cal. 177; *Bell* v. *Bed Rock T. & M. Co.* 36 Cal. 219; *Semple* v. *Cook,* 50 Cal. 29; *Sparrow* v. *Rhoades,* 76 Cal. 208; 9 Am. St. Rep. 197.) The general issue under early practice was "not guilty." (*Kirkland* v. *Thompson,* 51 Pa. St. 216; *Gallagher* v. *McNutt,* 3 Serg. & R. 409; *Zeigler* v. *Fisher,* 3 Pa. St. 365; *Lee* v. *Slatterly,* 7 Baxt. 235.) And is held to be the only proper plea in *Bernard* v. *Elder,* 50 Miss. 336; *Tegarden* v. *Carpenter,* 36 Miss. 404; *Bratton* v. *Mitchell,* 5

Watts, 69. Under it all defenses may be given in evidence without special plea, except statute limitations, set-off, and matter in abatement. (*Poffenberger* v. *Blackstone,* 57 Ind. 288; *Dale* v. *Frisbie,* 59 Ind. 530; *Woodruff* v. *Garnor,* 20 Ind. 174; *Tracy* v. *Kelley,* 52 Ind. 535.) Under general issue any available defense may be given. (*Black* v. *Tricker,* 52 Pa. St. 436.) Under it, defendant, if not a mere trespasser or intruder, may show title out of plaintiff at time of commencement of action. (*Raynor* v. *Timerson,* 46 Barb. 518–526; *Gillet* v. *Stanley,* 1 Hill, 121; *Bloom* v. *Burdick,* 1 Hill, 130; 37 Am. Dec. 299; *Stephens* v. *Sinclair,* 1 Hill, 143; *Schauber* v. *Jackson,* 2 Wend. 13–48; *Styles* v. *Gray,* 10 Tex. 503; *Kinney* v. *Vinson,* 32 Tex. 125.) Under it, defendant may prove any facts tending to establish that plaintiff is not vested with title or right of possession. (*Wickes* v. *Smith,* 18 Kan. 508; *Hall's Heirs* v. *Dodge,* 18 Kan. 277; *Webster* v. *Bebinger,* 70 Ind. 9.) The plaintiff must recover on the strength of his own title. (*Root* v. *Beck,* 109 Ind. 472.) In ejectment, after a party has made proof of title to a tract of land, the question whether the tract includes the premises in controversy is purely one of fact, and any evidence tending to solve the question is admissible. (*Manly* v. *Gibson,* 13 Ill. 313.) In ejectment, where plea is "not guilty and not in possession," the question of boundary or identity is one of fact, and it is the peculiar province of jury to weigh the evidence. (*Tolman* v. *Race,* 36 Ill. 472.) Where the parties hold title by deeds which describe the lots by number, the recorded plat is necessarily referred to for the ascertainment of dimensions (boundaries). (*Francois* v. *Maloney,* 56 Ill. 401.) When plaintiff in ejectment sues for, and describes his land according to a survey or plat, and there is a dispute as to the boundaries, the original plat may be resorted to, and the lines as originally run will control. (*McCormick* v. *Huse,* 78 Ill. 363.) Whether the land as described in deed given in evidence is the same as that described in plaintiff's declaration or complaint, is a question of fact for the jury. (*Lawless* v. *Newman,* 5 Mo. 236; *Newman* v. *Lawless,* 6 Mo. 279.) Where parol evidence is resorted to to identify the calls of a survey, the facts must be found by the jury. (*Ott* v. *Soulard,* 9 Mo. 573.) What are the boundaries of a given piece of land is a question for the court.

Where these boundaries are is a question for the jury. (*Abbott* v. *Abbott*, 51 Me. 575; *Barclay* v. *Howell's Lessees*, 6 Peters, 498.) The burden of proof that land sued for is within the conformation under which plaintiff in ejectment claims is on the plaintiff. (*Papin* v. *Allen*, 33 Mo. 260.) And upon this question of identity parol evidence is always admissible. (*Wing* v. *Burgis*, 13 Me. 111; *Waterman* v. *Johnson*, 13 Pick. 261.) In order to locate a grant of lands upon the surface of the earth, there must be evidence to show that the place of location agrees with the description in the grant; and the effect of such evidence is a question for the jury. (*Pinkerton* v. *Ledoux*, 129 U. S. 346.) Possession and equitable title is sufficient defense in ejectment brought by holder of legal title. (*Meeker* v. *Dalton*, 75 Cal. 154.) Plat constitutes part of title. (*Cragin* v. *Powell*, 128 U. S. 691.) In reference to other questions arising in the case, we refer generally to *Schnepel* v. *Mellen, supra; Edwards* v. *Tracy, supra; Clark* v. *Titus*, Ariz. July 8, 1886, 11 Pac. Rep. 312; *Bingham* v. *City of Walla Walla*, 3 Wash. 68; *Stark* v. *Starr*, 6 Wall. 402; *Matter of Selby*, 6 Mich. 193; *Rathbone* v. *Sterling*, 25 Kan. 444; *Treadway* v. *Wilder*, 8 Nev. 92; *City of Helena* v. *Albertose*, 8 Mont. 499.

*Carpenter, Buck & Hunt*, for Respondent.

Appellant relies chiefly upon the case of *Edwards* v. *Tracy*, 2 Mont. 49, to sustain his objection to the admission of the deed from Probate Judge Hilger to John H. Ming and Charles K. Wells. Certain expressions are used in the opinion in that case which furnish a ground for the contention; but respondent contends that these expressions are *obiter dicta* and in no manner essential to that decision. Edwards, the plaintiff therein, in attempting to make out a case threw himself out of the court by showing the deed upon which he relied to be absolutely void; and here in this connection we call attention to the fact that the question of Edwards, in the case of *Edwards* v. *Tracy, supra*, and also that of Schnepel, in the case of *Schnepel* v. *Mellen*, 3 Mont. 118, which appellant also cites, are almost identical with that of the appellant in this action. The presumption should be in favor of the deed to Ming and Wells. (*Anderson* v. *Bartels*, 7 Colo.

256; *Chever* v. *Horner*, 11 Colo. 68; 7 Am. St. Rep. 217. See, also, *Kentfield* v. *Hayes*, 57 Cal. 410.) If it is once granted that the presumptions are in favor of this deed, then under the law, and especially so under the pleadings in this case, the judgment in favor of the plaintiff must stand. The recital of a consideration of only fifty dollars in the deed does not nullify it. The recital of a consideration is not conclusive of the actual amount delivered or paid. (*Paige* v. *Sherman*, 6 Gray, 511; *Miller* v. *Goodwin*, 8 Gray, 542; *Drury* v. *Tremont Imp. Co.* 13 Allen, 168; *Irvine* v. *McKeon*, 23 Cal. 475; *Rhine* v. *Ellen*, 36 Cal. 362.) This action is strictly legal. If the deed from Probate Judge Hilger was properly admitted the respondent showed a perfect right to the possession of the lots in dispute. (*Lamme* v. *Dodson*, 4 Mont. 560; *Kentfield* v. *Hayes*, 57 Cal. 410; *Murray* v. *Hobson*, 10 Colo. 66.) The appellant in this matter sets up no equitable defense, and consequently did not vary the strict legal character of the suit. (*Miller* v. *Fulton*, 47 Cal. 146; *Kentfield* v. *Hayes*, *supra; Murray* v. *Hobson*, *supra; Lestrade* v. *Barth*, 19 Cal. 671; *Davis* v. *Davis*, 26 Cal. 39; 85 Am. Dec. 157; *Clarke* v. *Huber*, 25 Cal. 598.) In order to constitute the defense of the appellant equitable, it should have been set forth with the same care and completeness that is required in an original bill in equity. (*Kentfield* v. *Hayes*, *supra; Lamme* v. *Dodson*, *supra; Miller* v. *Fulton*, *supra; Downer* v. *Smith*, 24 Cal. 124; *Blum* v. *Robertson*, 24 Cal. 126.) The District Court therefore did not err in confining the case to the strictly legal issues involved, and excluding the irrelevant testimony of the appellant. The appellant is in no position to contest the title of the respondent. He apparently relies upon two sources of title: *First*, upon a quit-claim deed from a man named Emueller, who himself admits that he abandoned whatever claim (and it was only possessory at best) he had to the land in dispute fifteen years before; *second*, on a deed from Probate Judge Clements to two men whom appellant instigated to fence the land in 1887. Emueller's title is hardly worthy of discussion. Can a man stand idly by for fifteen years, acquiescing in the possession and ownership by another of a tract of land to which he had once some possessory right, and then, because it has become valuable, attempt to re-assert his claim with any

shadow of reason or right? The deed from Probate Judg
Clements was manifestly void. Probate Judge Hilger ha.
already parted with the trustee's title, and no title remained in
his possessor in office. (*Kentfield* v. *Hayes, supra; Murray* v.
*Hobson, supra; Anderson* v. *Bartels, supra.*) The appellant
stands before the court as a naked trespasser. (*Edwards* v.
*Tracy, supra.*) The pleadings admit the identity of the lots
claimed by appellant and those claimed by the respondent.
(*Murray* v. *Hobson, supra.*) If the Wheaton plat of the town
site of Helena is null and void, because no record appears of
the survey and field notes on which it must have necessarily
been based, then on appellant's theory of this case, there is no
legal title to any lot in the original town site of Helena; not one
has ever been acquired. The McIntyre plat and survey of the
town site of Helena was made pursuant to a law of the legisla-
ture, passed for the sole purpose of curing defects in the original
Wheaton survey of said town site. Even if the Wheaton plat,
which has been used to designate lot subdivisions in the town
site of Helena for twenty years, is a mere nullity, and the law
of 1883 passed to validate it is void, still in this strictly legal
action defendant, being in no position by his own pleading
to take advantage of either one or the other nullity, must fail in
his appeal. On the other hand, if this court holds that the
Wheaton plat, defective though it is, from being unaccompanied
by a record of its survey and field notes, is still a plat, a part
compliance with the law, and therefore susceptible of being
remedied by the Act of 1883, then also appellant has no equity
or law in his favor. It has been the policy of this Territory,
of Colorado, California, and Nevada, to discountenance and pre-
vent men who have failed to avail themselves of the liberality
of the United States, when opportunity was offered them of
acquiring title to town lots, from standing by for years until
such lots have enhanced in value, and then violently wresting
them from the possession of their more far-seeing neighbors.

DE WITT, J.—This action is in the nature of ejectment.
The respondent, as executrix of the estate of John H. Ming,
deceased, seeks to recover from appellant lots 1, 2, and 3, in
block 417, of the town site of the city of Helena, alleging title

in herself, and ouster by the appellant. Appellant's answer admits that he is in possession of the premises demanded, and alleges title in himself, which title he seeks to establish as hereinafter treated of. The action was tried before the court without a jury. Findings of fact and conclusions of law were made and filed by the court, and judgment thereon entered in favor of respondent for possession of the lots. A motion for a new trial, made by appellant, was denied. From that order and the judgment this appeal is prosecuted.

The facts, as we obtain them from the record, are as follows: In 1869, Helena was an unincorporated town in Lewis and Clarke County, Montana Territory. In that year Miers F. Truett, probate judge of that county, made due application to the United States for patent for the land on which the town was situated; and afterwards, June 15, 1872, the patent was duly issued by the United States to such probate judge, in trust for the inhabitants of the town, under the provisions of the act of Congress approved March 2, 1867, entitled " An act for the relief of the inhabitants of cities and towns upon the public lands," and the acts amendatory and applicable thereto. The land in controversy is within said patent. On December 20, 1872, N. Hilger, then probate judge of said county, made, executed, and acknowledged a bargain and sale deed to John H. Ming and Charles K. Wells of lots 1, 2, and 3, in block 417, a portion of the town site of Helena, granted to the probate judge as above described, and which is the ground in controversy in this action. The grantor in that deed is described as "N. Hilger, Probate Judge of Lewis and Clarke County, Montana Territory;'" and executes it as " N. Hilger, Probate Judge." The lots were described as bounded on the south by Eighth Avenue, on the north by lot 10, and on the east by Hoyt Street. Twelve other lots were included in the deed. The total consideration was fifty dollars. By mesne conveyances, the title so conveyed by the probate judge became and was vested in John H. Ming, by whom this action was commenced, prior to the initiation thereof. During the pendency of the case the original plaintiff died, and respondent, as executrix of his estate, was duly substituted, and the cause thus proceeded. A plat of the said Helena town site was prepared

by one A. C. Wheaton, by order of the probate judge, in 1868, and was accepted and approved January 7, 1869, by the board of commissioners of the county, and duly filed at the same time in the office of the county clerk and recorder. On the Wheaton plat are designated lots 1, 2, and 3, in block 417, bounded as above described. It does not appear that there were any field notes made or filed with the Wheaton plat. That in pursuance to the act of the legislative assembly of the Territory approved March 1, 1883, entitled "An act relating to the official survey of the town site of Helena," a plat and field notes of a survey of such town site were made by one McIntire, and accepted and approved on September 12, 1885, by the board of county commissioners, and on the same day filed in the office of the county clerk and recorder. That on said plat and in said field notes appear lots 1, 2, and 3, in block 417, bounded on the south by Eighth Avenue, on the north by lot 10 of said block, and on the east by Hoyt Street. On May 10, 1887, the appellant, George B. Foote, entered upon the land in controversy, claiming under a deed from Harry H. Thale and George Orth, and engaged in fencing it; and that before the fence was finished said John H. Ming was upon the premises claiming the same. That since said day said George B. Foote has been, and now is, in possession of the premises. That he at no time prior to May 10, 1887, made any improvements thereon. It does not appear that when Ming and Wells received their deed from Probate Judge Hilger that they were occupants or in actual possession of the lots, or made any proof to the probate judge of thier right to such possession or occupancy of the same. To almost all of this evidence objections were made by the appellant, the reasons for which we will review hereinafter in discussing the specifications of error.

In addition to the above facts, appellant offered to prove on the trial, and were precluded therefrom by the ruling of the court, the following facts: That lots 1, 2, and 3, in block 417, as the same are described in the Wheaton plat, would occupy a different portion of the surface of the earth than lots 1, 2, and 3, block 417, as described in the plat and field notes of the McIntire survey. Appellant offered in evidence a quit-claim deed from one Anton Emueller to himself, dated May 9, 1887,

acknowledged May 11, 1887, and recorded May 12, 1887, in which the ground purporting to be conveyed is described as lots 1, 2, and 3, block 417, of the town site of Helena; also a deed from Probate Judge Clements to Harry H. Thale and George Orth, dated May 10, 1887, recorded May 11, 1887, and a deed from said Thale and Orth to appellant Foote, dated May 10, 1887, and recorded May 11, in which deeds the premises purporting to be conveyed are described by lots and block, as above. Appellant then offered to prove by the then probate judge an application to purchase said lots by said Thale and Orth. The above evidence, so proffered by appellant, was heard by the court under objections, but was stricken out, and not considered. It was, however, in evidence that Emueller, mentioned above, had once a sort of transitory floating possession of the premises for placer mining purposes, and with a cabin, but not since the year 1873.

The District Court found the facts as above recited, and upon such findings, and upon the exclusion of appellant's proposed testimony, reached the following conclusions of law: —

1. The answer of the defendant does not allege that the premises claimed by the defendant are located elsewhere than the premises described in the complaint, and the pleadings relate to the same parcels of ground.

2. That the Wheaton plat was, from and after its approval in 1869 until 1885, the official plat of the said town site of Helena, under the laws of the United States and said Territory.

3. That the said McIntire plat and field notes of survey of said block 417, from and after the twelfth day of September, 1885, became and are the official survey of said block No. 417, and confirmed all the rights and interests of plaintiff therein, as shown by the conveyances of title to the plaintiffs and their predecessors in interest from the said probate judge of said county, and cured the alleged incompleteness and inaccuracy of the said Wheaton plat.

4. That the issuance of said deed by said Hilger, as the probate judge of said county, conveyed to said Ming and Wells the legal title to said lots 1, 2, and 3, in said block 417, and that the said J. M. Clements, the probate judge of said county, had no authority, as the said trustee of the said

town site of Helena, to issue said deed to the grantors of the defendant.

5. That the deeds issued to the said defendant by his grantors conveyed no title, right, or interest to the premises in controversy in this action.

6. That as between the parties to this action the defendant cannot question the validity of the acts of the probate judge of said county in conveying the property in controversy to said Ming and Wells.

7. That the defendant and his grantors had notice of the title of plaintiff, and the approving and filing of the said McIntire plat, about two years before the construction of the fence by the defendant.

8. That defendant, upon the tenth day of May, 1887, entered upon said premises, and has ever since held the possession thereof, without any right or title thereto.

9. That the plaintiff has suffered damage in the sum of one dollar.

The appellant, on motion for a new trial, made twenty specifications of error, which are now brought before us for review. They can, however, be much reduced in number, many of them depending upon one point. For instance, the first error urged which we will consider is the conclusion of the court below that Ming and Wells, so far as the purposes of this action and the position therein of the plaintiffs are concerned, acquired good title to the premises in controversy, by virtue of the deed from Probate Judge Hilger to them. Upon the decision of this point depends a large portion of appellant's position. This, determined in either way, disposes of the objection to the exclusion of the deed from Probate Judge Clements to Thale and Orth, the deeds from the latter to the appellant, the exclusion of evidence of occupancy by Thale and Orth, and their application to purchase from the probate judge, the exclusion of the deed from Emueller to Foote, and the admission of the chain of title from Ming and Wells to the respondent.

Again, the District Court found that the pleadings admitted that the premises demanded in the complaint and claimed in the answer were identical; in other words, that the matter of non-identity was not raised by the pleadings, but the contrary ad-

mitted. Upon the decision of this specification depends all of appellant's objections as to the exclusion of his proffered testimony that lots 1, 2, and 3, block 417, in the Wheaton survey, were entirely wanting in geographical coincidence with the same named lots in the McIntire survey. The errors thus complained of reduce themselves to few in number, which we will examine in order.

The principal error complained of by the defendant is the action of the court in admitting in evidence the deed from Probate Judge Hilger to Ming and Wells, which deed is the foundation of the respondent's title. Appellant objected to said deed because it does not show upon its face the authority by which the officer acted; because the consideration named in the deed is less than that required by law; because the deed does not show the trust capacity of the grantor; because the deed does not itself show, nor is it elsewhere in the evidence offered to be shown, that the grantees were the legal beneficiaries of the trust held by the probate judge; because the deed shows that it was obtained for speculative purposes (presumably by reason of the alleged inadequacy of the consideration); because its issuance was beyond the powers of the probate judge—for all which reasons the deed was void, and not voidable only.

The laws of the United States and the Territory, in reference to obtaining title from the government for town sites upon the public domain, so far as they are applicable to this case, are as follows: "An act for the relief of the inhabitants of cities and towns upon the public lands," approved March 2, 1867 (14 U. S. Stats. at Large, 541), enacts, among other things, as follows: "That whenever any portion of the public lands of the United States have been or shall be settled upon or occupied as a town site, and therefore not subject to entry under the agricultural pre-emption laws, it shall be lawful, in case such town shall be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the County Court for the county in which such town may be situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the

proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated ; . . . . *provided, further*, that any act of said trustee, not made in conformity to the rules and regulations herein alluded to, shall be void."

The legislative assembly of the Territory of Montana passed laws to give effect to the above act. Such laws, as they were in force at the time of the deed from the probate judge to Ming and Wells, are compiled in the Laws of 1872. Codified Statutes, page 547, section 1, provides for the entry of the land occupied as a town, in the land office, by the corporate authorities of the town, or the probate judge of the county, in trust for the several use and benefit of the occupants of such land, according to their respective interests. Section 2 empowers the corporate authorities or the probate judge to perform the several acts and things necessary and appertaining to the entry of such land in the proper land office. Section 3 provides for the survey of such town site, which shall conform as near as may be to the existing rights and claims of the occupants. Section 4 designates what the plat and survey shall contain ; and sections 5 and 6 are as follows: "Sec. 5. Immediately after such plat and survey have been filed, or if such survey and plat have been made previously to the entry, according to the provisions of section 3 of this act, then immediately after the entry of the lands at the proper land office, as provided in the first section of this act, the corporate authorities or the probate judge, as the case may be, shall cause a notice to be published in all the newspapers published in such town, or if no newspaper be published in such town, then by advertisement posted up in twelve of the most public places in such town for at least two months, giving notice of such entry, and requiring every claimant or claimants of any town lot or lots to file in the office of such corporate authorities or probate judge, as the case may be, a statement of his or their claim, within two months from the date of the first publication of such notice. Sec. 6. Such statement shall be made in writing, signed by the party or parties making the same, and verified by the affidavit of such party or parties, and shall be recorded at length in a well-bound book to be provided and kept for such purpose by such cor-

porate authorities or judge of probate, as the case may be. Such statement shall specify the ground of such claim, particularly describing the lot or lots claimed; the date, as near as may be, of the occupation of such lot or lots, and by whom; what improvements have been made on said lot or lots, and the value thereof; and that such lot or lots are now actually possessed and occupied by such claimant, or that the right to such occupation is in the claimant, if such lot or lots be occupied by another." The two preceding sections are originally found in the Act of December 12, 1867 (Laws 4th Sess. 61). Other sections follow, providing for the execution of said trust confided to the probate judge, and, among them, section 16: "The residue of lots (after conveying to actual occupants as aforesaid) in the possession of the corporate authorities or probate judge, as the case may be, and unclaimed after the expiration of sixty (60) days, it shall be the duty of the probate judge or corporate authorities, as the case may be, to post up notices, or cause the same to be done, in at least four public places in the county in which such town site is located, at least ten days before sale, that he will offer and sell at public sale all of, or so many as he may think proper of, the lots that may remain unclaimed at the time advertised; and that all lots, having been thus advertised and offered for sale, not bringing at least the minimum price, etc., shall be subject at any time thereafter to private entry at the minimum price." Originally Act January 6, 1870 (Laws 6th Sess. 67).

It is admitted by the record that the respondent, plaintiff in the action, did not prove what may be called the "jurisdictional facts" authorizing Probate Judge Hilger to make the deed to her predecessors, February 20, 1872; that is, she did not prove that the acts required by the statutes cited above as preliminary to and conditions of the issuance of such deed, had been performed. Appellant contends that the probate judge was a ministerial and not a judicial officer, and that consequently all acts by virtue of which came his authority to make the grant must be affirmatively proved by the party relying upon such grant, and cannot be presumed. Whether such probate judge were strictly a ministerial officer, or whether he were endowed with *quasi*-judicial functions of a limited nature, is, in the view we take of this case, a vital matter; and we will pursue the inves-

tigation with the ultimate solution of this proposition constantly ic view. The appellant relies upon *Ming* v. *Truett*, 1 Mont. 325; *Edwards* v. *Tracy*, 2 Mont. 49; *Schnepel* v. *Mellen*, 3 Mont. 118; and *City of Helena* v. *Albertose*, 8 Mont. 499. We will review these cases.

In the first, the court (Knowles, J.) say: "The law conferring upon the probate judge the power to enter public lands upon which any town is located, and awarding to its citizens town lots under the provisions of law, does not purport to confer upon him any judicial powers. The power is conferred upon him, and not upon his court. He is simply d ignated as the trustee for the benefit of the citizens of the town. His duties in allowing entries of lots are prescribed by law, and he acts in a ministerial capacity." True, the "law conferring upon him the power to *enter public lands*" does not give him judicial authority. The law referred to is the law of Congress authorizing the grant to the probate judge. It is not objected by appellant that respondent failed to prove the successive and necessary steps to be taken by the probate judge to obtain patent from the United States, and, in fact, these steps were proved on the trial. But the same act of Congress creating the trust in the probate judge provides that the execution of such trust shall be in accordance with rules and regulations to be prescribed by the legislative authority of the Territory; and when the case of *Ming* v. *Truett* was tried in the District Court, and heard in the Supreme Court, the legislature of Montana had provided for the execution of such trust, among other things, as follows: "In all cases where there is a dispute or contest in regard to the right to the deed to any lot or lots, the probate judge . . . . shall hear the testimony relating thereto; and, after two days' notice of such time and place of hearing given to each and every contestant, he shall proceed to hear and decide such claims in accordance with the principles of right and justice, and the provisions of this act; . . . . *provided*, the . . . . judge may adjourn from time to time, as he may deem just for the fair *adjudication* of said claim or claims." (§ 11, Act Dec. 12, 1867, Laws 4th Sess. 62.) Section 12 of the same act goes on to provide fully for an appeal to the District Court by any person feeling aggrieved by "such *decision;*" and provides

further: "And in all cases the pleadings and proceedings thereafter shall be governed by the same rules applicable to actions originally commenced in the District Court."

Therefore, although the act of Congress conferred no judicial functions upon the probate judge, as held in *Ming* v. *Truett, supra,* the act of the legislative assembly of the Territory, passed for the purpose of giving effect to the act of Congress, and carrying out the grant for the benefit of the inhabitants, defines the position and character of the probate judge in terms which would be peculiarly misapplied to a strictly ministerial officer. Our views as to the judicial or ministerial character of the probate judge, as to the subject-matter, will be fully developed later in this opinion.

Passing to the case of *Edwards* v. *Tracy, supra,* we find a contest between two claimants of a town lot in the town of Bozeman. The plaintiff Edwards claimed by virtue of a deed from the probate judge dated about July 1, 1870. He voluntarily, and without objection by the defendant, offered in evidence an application made by him to the probate judge, for the purchase of the lot, which application says: "That said lot is vacant and unclaimed by any other party; that the improvements upon said lot consist of ———, of the value of ——— dollars; that the value of said lot is about one hundred dollars; that the same is now occupied by ———; that the right to the possession and occupation is in the said Thos. R. Edwards." The deed, which was made in pursuance to this application, was offered in evidence, and admitted; for which action of the court the defendant assigned error, which assignment was by the Supreme Court sustained. It will be observed that the applicant therein based his claim to a deed from the probate judge upon his alleged *right to* the possession and occupation of the lot, and not upon an actual possession and occupation; and he states his reason for his alleged *right to* possession, viz., that "no one else occupies the same, and that it is vacant." He thus deliberately, by his own affirmative testimony, in introducing the application to purchase, confessed himself out of court; and the court (Knowles, J.) properly say: "The claim to enter a lot by one out of possession, or *without the right to the possession,* does not come within the purview of this section [referring to § 6, above cited]. The appli-

cant in this case bases his right to the possession upon the fact that no one else occupies the same, and that it is vacant. These give no such right. There was no right vested in the trustee, who was in this case Noble [probate judge], to make a conveyance of a lot upon such an application as the one presented by the plaintiff in the case." The opinion up to this point is sufficient to sustain the decision of the Supreme Court. What was afterwards said by the learned judge is *obiter dicta*, and we do not feel that, in the case at bar, we are controlled thereby, although he did practically say, in that case, *obiter*, that a plaintiff in ejectment, relying upon such probate judge's deed, must affirmatively prove all facts giving such grantor authority to make the conveyance.

The case of *Schnepel* v. *Mellen*, *supra*, was a contest between rival claimants to a deed from the probate judge, a contest originally heard and determined by the probate judge, and thence appealed, through the District Court, to the Supreme Court. The action assumed the nature of one to quiet title. It was tried upon an agreed statement of facts. The question was not raised as to whether a party in ejectment, holding a probate judge's deed, and thereon relying, must prove the authority of his grantor to make the deed. The matter before the court was the construction of the acts of the respective claimants, as those acts were presented to the probate judge, and as to which claimant was entitled to the deed from the probate judge, by virtue of the facts. The point . . . . under discussion in the case at bar was not involved in *Schnepel* v. *Mellen*. In that case the defendant exhibited in evidence the facts constituting his alleged possession as a foundation for his alleged right to a deed. Those facts were digging some post holes in the night without the knowledge of any one save himself, and the court held that the alleged possession of the defendant was not of that open, actual, and unequivocal character which entitled him to enter the lot, as against an eight years' uninterrupted possession by the plaintiff, his adverse claimant to the premises.

In *City of Helena* v. *Albertose*, *supra*, the court (Bach, J.) say: "When the probate judge undertook to establish by that map [the town-site map] a street over lands actually occupied by individuals as a residence when the entry was made by the

probate judge, his act was in conflict, . . . . and the public had no right as against such an occupant." The court elsewhere in that opinion says: "Neither the laws of this Territory, nor the act of the probate judge, could deprive any person of the land occupied by him at the time when the probate judge made the entry of the town site, and give such land to one who was not an occupant thereof." With these views we concur. The appellant seems to rely upon this case to sustain some rights claimed to be acquired by virtue of the ancient, transitory, placer mining possession of Emueller, a possession which ceased in 1873, was always of a floating character, without any certain local habitation, and which was sought to be resurrected in 1887, by the deed from him to Foote. It does not appear that Emueller ever made any application to purchase the premises from the probate judge, but that he abandoned all possession and claim thereto for fourteen years. This matter we dispose of later; but, in passing, *quære*, had he not forfeited all claim by his laches? (Comp. Stats. § 2017, div. 5.)

We have reviewed the former utterances of this court upon the matters urged in appellant's first specification of error, because he has zealously pressed these four cases upon our consideration, and because there is contained in them some *dicta*, and in *Ming* v. *Truett*, a decision which is in conflict with the conclusion we have reached as to the alleged error of the lower court in holding that the deed of Probate Judge Hilger to Ming and Wells conveyed title to those grantees, as far as the purposes of this action, and the position of defendant therein, are concerned. We will say, however, before going into that matter, that the plaintiff did not, in the case at bar, voluntarily put herself out of court by showing, in her own affirmative testimony, that she had no right whatever to the premises, as did the plaintiff in *Edwards* v. *Tracy* and the defendant in *Schnepel* v. *Mellen.* As to the nature of the functions of the probate judge, in the execution of a town-site trust, the Supreme Court of Colorado (Beck, C. J.) says: "The government, instead of issuing patents to the several claimants, and instead of granting the tract to the territorial organization, transferred the title of the entire tract to the judge of the Probate Court of Arapahoe County, in trust for the parties entitled to conveyances. By the terms of the

grant the probate judge was the officer and representative of both the federal and the territorial governments in the disposal of these lands. He was invested with functions analogous and similar in character to those of the land department of the general government, or of the officers of a State, charged with the same class of duties. His duties involved the hearing and consideration of testimony concerning the rights of claimants, and passing upon its competency, credibility, and weight. It also involved judicial trials before him, in certain instances, wherein he was required to render judgments, from which appeals might be prosecuted to the Supreme Court of the Territory." (*Anderson* v. *Bartels*, 7 Colo. 265.) This language might have as appropriately been written of the character of the probate judge of Montana, under the provisions of sections 11 and 12, Laws Fourth Session, 62, *supra.*

We believe that the correct and logical construction of the trust position of the probate judge in these matters is that it is *quasi*-judicial in its character. It was so recognized by this court in *Schnepel* v. *Mellen, supra,* in which case this court heard an appeal from an adjudication originally made by the probate judge under the town-site laws. If the probate judge originally had no jurisdiction, the Supreme Court had none. The term "jurisdiction" suggests the idea of a judicial tribunal in which it is to be exercised. It is not material whether the judicial function be deemed to reside in the probate judge individually, or in him as the Probate Court of the Territory. The probate judge "must hear the testimony." "He must give notice of the hearing to each and every contestant." "He shall hear and decide in accordance with the principles of right and justice." "His action is called an 'adjudication.'" "An appeal to the District Court is provided for." "The pleadings and proceedings shall be governed by the same rules applicable to actions originally commenced in the District Court." These are the expressions in the last-cited act, *supra.* They all point irresistibly to the intent to invest the probate judge with *quasi*-judicial functions, as to a limited subject-matter. This conclusion, arrived at, brings promptly to our aid the rule of law that the judgment of a special judicial tribunal, with jurisdiction to hear and determine questions of fact presented to it, such as the

United States land office, is conclusive, when brought to notice
in a collateral proceeding.

Mr. Chief Justice Marshall, early in the history of the
Supreme Court of the United States, in speaking of acts of the
land office of the State of North Carolina, said in the case of
*Polk's Lessee* v. *Wendal*, 9 Cranch, 87: "The law for the sale
of public lands provides many guards to secure the regularity
of grants, to protect the incipient rights of individuals, and also
to protect the State from imposition. Officers are appointed to
superintend the business, and rules are framed prescribing their
duty. The rules are, in general, directory; and, when all the
proceedings are completed by a patent issued by the authority
of the State, a compliance with these rules is presupposed.
That every prerequisite has been performed is an inference
properly deducible, and which every man has a right to draw,
from the existence of the grant itself. It would therefore be
extremely unreasonable to avoid a grant in any court for ir-
regularities in the conduct of those who are appointed by the
government to supervise the progressive course of a title from
its commencement to its consummation in a patent." In *Smelt-
ing Co.* v. *Kemp*, 104 U. S. 640, the same court (Field, J.)
says: "In the course of their duty the officers of that depart-
ment [the land department] are constantly called upon to hear
testimony as to matters presented for their consideration, and
to pass upon its competency, credibility, and weight. In that
respect they exercise a judicial function, and therefore it has
been held in various instances by this court that their judgment,
as to matters of fact properly determinable by them, is conclu-
sive when brought to notice in a collateral proceeding. Their
judgment in such cases is, like that of other special tribunals
upon matters within their exclusive jurisdiction, unassailable,
except by a direct proceeding for its correction or annulment.
The execution and record of the patent are the final acts of the
officers of the government for the transfer of its title, and, as
they can be lawfully performed only after certain steps have
been taken, that instrument, duly signed, countersigned, and
sealed, not merely operates to pass the title, but is in the nature
of an official declaration by that branch of the government to
which the alienation of the public lands, under the law, is

intrusted, that all the requirements preliminary to its issue have been complied with. The presumptions thus attending it are not open to rebuttal in an action at law."

We cite these cases, not so much to illustrate the rule laid down, which is familiar as a household word, as to make manifest the reason on which the rule rests, a reason which logically results in our conclusion that the probate judge, under the territorial laws, was invested with the judicial powers, as above indicated. Therefore, when a deed from him is relied upon for title in an action of ejectment, it is entitled to the presumptions of regularity in its favor, as against a defendant such as the appellant herein, claiming under an alleged deed from the same common source of title, issued fifteen years later, without requiring from the elder grantee affirmative proof of the preliminary steps conferring authority to make the grant.

But the appellant urges that he is within an exception to the rule. He cites the portion of the law "that any act of said trustee [probate judge], not made in conformity to the rules and regulations herein alluded to, shall be void." We recur again to the opinion of Chief Justice Marshall, *supra:* "But there are some things so essential to the validity of the contract that the great principles of justice and of law would be violated did there not exist some tribunal to which an injured party might appeal, and in which the means by which an elder title was acquired might be examined." The opinion then goes on to state how and why such investigation should be in a court of equity, and concludes: "In general, then, a court of equity is the more eligible tribunal for these questions, and they ought to be excluded from a court of law. But there are cases in which a grant is absolutely void; as where the State has no title to the thing granted, or *where the officer had no authority to issue the grant.*" The italics are ours. Upon this exception appellant rests. The case of *Polk's Lessee* v. *Wendal* was exhaustively reviewed in the opinion of Mr. Justice Field, cited *supra* (*Smelting Co.* v. *Kemp*), and this exception there treated by him as follows: "So, also, according to the doctrine in the cases cited, if the patent be issued without authority, it may be collaterally impeached in a court of law. This exception is subject to the qualification that when the authority depends upon the existence

of particular facts, or upon the performance of certain antecedent acts, and it is the duty of the land department to ascertain whether the facts exist, or the acts have been performed, its determination is as conclusive of the existence of the authority against any collateral attack as is its determination upon any other matter properly submitted to its decision." (See, also, cases there cited.) This last utterance concludes us, in our opinion. The authority of the probate judge did depend upon the existence of certain facts. It was his duty to ascertain whether these facts existed. His determination is evidenced by his deed, and the same is conclusive against collateral attack. (*Smith* v. *Pipe*, 3 Colo. 187.) It was therefore not error to admit in evidence the deed from Probate Judge Hilger to Ming and Wells, and the District Court correctly found that said deed vested a legal title, which had come by mesne conveyances to the plaintiff, good as against the defendant, for the purposes of this action of ejectment. (See, also, *Sherry* v. *Sampson*, 11 Kan. 611.)

That the consideration named on the face of the deed is less than the legal one is not material. The consideration upon the face of a deed is not conclusive. (*Polk's Lessee* v. *Wendal, supra.*)

The objection that the deed was not made by N. Hilger as probate judge is not well founded. He described himself in the deed as "N. Hilger, Probate Judge of Lewis and Clarke County, Montana Territory," and executed it, "N. Hilger, Probate Judge." (See *Smith* v. *Pipe*, 3 Colo. 187.)

Our conclusion above reached, as we have hereinbefore intimated, disposes of the major part of appellant's assignments of error. It also disposes of the objection to the original town-site plat, the Wheaton plat. That plat was incomplete, in the absence of its field notes; but it amply appears from the evidence that it was the official plat, and the only official plat, of the town site, from its due approval and filing, in 1869, until it was superseded by the McIntire plat in 1885. It appears that the deed in question was made by it, as were all deeds in the town site for a period of seventeen years. If the plat were insufficient and incomplete, there would seem to be here an opportunity for the application of the maxim, *communis error facit jus.*

The testimony proffered by appellant, that the portion of the

earth's surface indicated in the Wheaton plat as lots 1, 2, and 3, in block 417, is geographically different from the premises described by the same designation in the McIntire plat, was properly excluded, as the pleadings admit that the ground demanded by plaintiff, and claimed and held by the defendant, is the same. The answer does not allege that the premises claimed by defendant are located elsewhere than those described by the complaint. A description of lots in a town site which has been officially platted and surveyed by the number of lots and block is a sufficient description of the *locus in quo.* (2 Devlin on Deeds, § 1020, n. 2.) If we be correct in the conclusion expressed, then the deed from Probate Judge Clements to Foote's predecessors, May 10, 1887, was a nullity, the predecessor of the grantor having years before parted with the whole title, and that deed was properly excluded. The deed from Emueller to Foote, May 10, 1887, and the evidence of Emueller's floating and abandoned possession fourteen to sixteen years prior to said deed, shares the same fate. This disposes of the errors as specified.

Be it understood that we do not hold that the deed from Probate Judge Hilger to Ming and Wells is above or beyond attack, but that such attack must be made in an equitable action for that purpose, and not in the law action of ejectment. We draw once more from the wealth of learning in *Polk's Lessee* v. *Wendal, supra:* "On an ejectment, the pleadings give no notice of those latent defects of which the party means to avail himself; and, should he be allowed to use them, the holder of the elder grant might often be surprised. But in equity the specific points must be brought into view; the various circumstances connected with those points are considered; and all the testimony respecting them may be laid before the court. The defects in the title are the particular objects of investigation, and the decision of a court in the last resort upon them is decisive. The court may, on a view of the whole case, annex equitable conditions to its decree, or order what may be reasonable, without absolutely avoiding a whole grant." The defendant below did not set up an equitable defense in the nature of a cross-complaint, nor did he change the strict legal character of the action. We may take his own expressive, if not altogether elegant, language used on the

argument, and let him abide by the position as he announces it; that "the action is a square-toed one of ejectment." If he desired to avail himself of the equitable defense suggested, he should have set up the same in his answer with as much detail as if it were an original bill in equity. (*Lestrade* v. *Barth*, 19 Cal. 671; *Davis* v. *Davis*, 26 Cal. 39; 85 Am. Dec. 157, and cases there cited; *Miller* v. *Fulton*, 47 Cal. 146; *Kentfield* v. *Hayes*, 57 Cal. 410; *Lamme* v. *Dodson*, 4 Mont. 560.) Not having done so, the judgment of the lower court is correct, and that judgment and the order denying a new trial are each affirmed.

HARWOOD, J., concurs. BLAKE, C. J., did not sit in the case, or participate in the decision, for the reason that he had acted as judge on the trial of the case below.