[Sac. No. 886.   Department One. — May 28, 1901.]

## COUNTY OF AMADOR, Respondent, v. WILLIAM S. GIL-BERT, Appellant.

TOWN SITE — EXECUTION OF TRUST — VACANT LAND — LIMIT OF PRE-EMP-TION RIGHT — AUCTION SALE — VOID DEED. — Under the town-site act of Congress of March 2, 1867, as supplemented by acts of the legislature passed in pursuance thereof, where a superior judge held in trust for purchasers only the " unoccupied or vacant and unclaimed land " within the limits of the town site, which re-mained unsold at the end of six months after filing the town plat, to which the right of pre-emption was limited, he can only exe-cute his trust thereafter by selling such land at public auction to the highest bidder for cash; and a deed by him, not complying with · these conditions, is void, and confers no title.

ID. — VOID DEED OF PUBLIC SQUARE. — Land dedicated on the town-site map as a plaza or public square does not come within the descrip-tion of land which the judge, as trustee, is authorized to sell, unless by special order of the board of supervisors of the county; and a deed of such land by the judge, without the authority of the super-visors, is absolutely void.

APPEAL from a judgment of the Superior Court of Ama-dor County and from an order denying a new trial.   G. W. Nicol, Judge.

The facts are stated in the opinion.

Neil A. Macquarrie, for Appellant.

C. P. Vicini, District Attorney, and William J. McGee, for Respondent.

SMITH, C.—The suit was brought to annul a deed made by the judge of the superior court of Amador County, purport-ing to convey to the defendant a lot or piece of land in the un-incorporated town of Jackson, in said county, and to eject the defendant from the premises and remove the buildings there-from.

The town site of Jackson was granted by the government of the United States, August 6, 1870, to the county judge of Ama-dor County and his successors, in trust, for the inhabitants of the town,—the patent being issued under the provisions of the act of Congress of March 2, 1867, " for the relief of the inhabi-

tants of cities and towns upon the public lands." (14 U. S. Stats. at Large, 541; U. S. Rev. Stats., secs. 2387 et seq.) Under this act, provision had been made for the entry of such lands by the county judge of the county in which they were situate, "in trust, for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state,". etc. In pursuance of the authority thus granted, an act was passed by the legislature of the state, March 30, 1868, prescribing the duties of the county judge in executing the trust in such cases (Stats. 1867–68, p. 692); and afterwards, by the amendatory and supplementary act of March 12, 1885, the judge of the superior court of the county was substituted as trustee in place of the county judge, whose office had been abolished. (Stats. 1885, p. 115.) At the date of the deed to the defendant, therefore, the legal title of the town site — with the exception of lands previously conveyed to occupants or others — was vested in the judge of the superior court in trust for the inhabitants of the town, and subject to the provisions of the acts of the legislature prescribing the mode of executing the trust. The question to be considered, therefore, is, whether the deed in question was authorized by the terms of the trust. Otherwise, it was void. (Civ. Code, sec. 871.)

In this case, before the passage of the last act, the trust, so far as it could be, had been executed by the county judge, who, on the issue of the patent in 1870, proceeded at once to perform, and — so far as appears — did perform, all the duties imposed on him by the original act. The trust was thus fully performed, except with reference to the "unoccupied or vacant unclaimed land within the limits of the town site" (if any) referred to in section 15 of the act; and there remained no functions to be performed by the superior judge, with reference to the land referred to, other than those prescribed by the section cited. Ordinarily, indeed, the power of the trustee to convey might exist in favor of two classes of persons; namely, original occupants, to whom the original trustee had failed to convey, as required by section 10 of the act, and purchasers under the provisions of section 15. But there is no

pretense here that the defendant was one of the former class, and the validity of the deed is therefore to be determined by the provisions of the latter section.

Under these provisions the right of pre-emption, "at a price not less than one dollar per acre or fraction of an acre," is given to "possessors of adjoining lands, or other citizens of said town"; but it is further provided, that "if any such lands remain unsold at the end of six months after filing the town plat, the said judge shall proceed, in the same manner and at the same time that any delinquent land shall be sold [i. e., at public auction (sec. 12)], to sell said lands to the highest bidder, for cash"; and from this provision it appears that the privilege of pre-emption given in the preceding part of the section is limited to six months after the filing of the plat. We thus arrive at the conclusion that the superior judge had no power to convey lands otherwise than to the highest bidders, for cash, at public auction, after survey and subdivision of the land, and compliance with the other provisions of this section of the act. It is not pretended that in the execution of the deed to the defendant any of these conditions were complied with.

Another objection made to the authority of the judge to make the deed is, that the land conveyed did not come within the description of the land he was authorized to sell; or, at least, that it was of the kind of land referred to in section 5,— namely, "all streets, roads, lanes and alleys, public squares, cemeteries, and commons, surveyed, marked, and platted on the map of [the] town site," which it is provided "shall be deemed and considered, and . . . are hereby declared to be, dedicated to public use by the filing of such town plat, etc., and shall be inalienable, unless by special order of the board of supervisors of the county," etc. In this case it is not claimed that the sale was authorized by the board of supervisors; and it will therefore be unnecessary to inquire whether the kind of lands referred to in this section, and declared dedicated to public use, comes within the description of "unoccupied or vacant unclaimed land," referred to in section 15. It will be sufficient to inquire only whether the land described in the deed was in fact dedicated.

On this point the record leaves no room for doubt. The land in question forms part of an open plaza, or space about the center of the town, on which the three blocks shown on

the map (8, 9, and 10) all front.   The main street of the town — marked on the map " Main Street," and running from south to north — has its eastern line coincident with the east line of the plaza; and there is no line on the west, other than the west line of the plaza.   North and south of the plaza, the street is marked by clearly defined lines in ink, — showing a width south of the plaza of about a chain, or 66 feet, and to the north of it, a little less.   On the northwest of the plaza there enters a highway, marked "Sutter Road."   All this indicates plainly that the plaza is "designated" on the map as part of the highway or highways of the town, — as required by section 3 of the act.   For, otherwise, the owners of lots on the west of it would have no frontage, and the communication between "Sutter Road" and "Main Street" would be cut off, and the alley entering it at the southwest corner would have no exit. . And further, it is clear from the boundaries of Main Street, as represented on the map, that it constitutes a part of that street. The field-notes are not very clear, but they, in effect, confirm this construction.   Thus block 10 is described as "all on the west of Main Street, to crossing of creek, and [of] Sutter Road to Trenchell residence," etc.; lots 29 and 30, as bounded "on the east by the road"; lot 31, as bounded "on the east by the creek" (running though the center of the plaza); and lot 24, as bounded "on east by Miner, etc., and Main Street."   The plaza must therefore be regarded as "designated" on the map as part of "Main Street," and therefore, under the provisions of section 5, as dedicated to public use.

We have no difficulty, therefore, in arriving at the conclusion that the deed was absolutely void.   Nor would this conclusion be affected by the provisions of section 24 of the act. That section can have no application to a case of this kind, where it appears affirmatively from the recitals in the deed, and from the verified petition of the grantee on which it was made, that the deed was not made "pursuant to the provisions of [the] act," etc.   Nor have the provisions of section 10 any application to a deed of this kind, or to any deed other than those provided for in the section itself.

I advise that the judgment and order denying the defendant's motion for new trial be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying the defendant's motion for new trial are affirmed.          Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.