# CALLAHAN v. JAMES.*

## Sac. No. 964; December 18, 1902.

### 71 Pac. 104.

**Public Lands — Townsite — Construction of Statutes.— Revised** Statutes of the United States, section 2322 (U. S. Comp. Stats. 1901, p. 1425), confers on the locator of a mining claim a possessory title. Section 2324 (U. S. Comp. Stats. 1901, p. 1426) requires such locator to do a certain amount of work annually.  Section 2386 ·(U. S. Comp. Stats. 1901, p. 1457) subjects townsite titles to whatever possessory right in the locator is recognized by local authority, as does also Statutes of 1867–68, page 696, section 10, so long as the locator shall comply with the laws. Section 2392 (U. S. Comp. Stats. 1901, p. 1459) provides that no town lot title shall be acquired "to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession held under existing laws." Section 2387 (U. S. Comp. Stats. 1901, p. 1457) authorizes townsite lands to be conveyed to occupants, and the balance to be sold, or otherwise disposed of.  Held that, construing section 2392 (U. S. Comp. Stats. 1901, p. 1459), in the light of previous legislation which it embodies (Acts March 2, 1867, ·14 Stats. 541 (U. S. Comp. Stats. 1901, p. 1460), and June 8, 1868 (15 Stats. 67), showing that the intent was merely to confer on mining titles acquired from the United States the same superior quality given by section 2386, enacted· March 2, 1865 (U. S. Comp. Stats. 1901, p. 1457), to those recognized by local authority, and construing it also in view of section 2387 (U. S. Comp. Stats. 1901, p. 1457), showing an intent that the entire townsite be disposed of, and also in view of its own wording, the clause, "or to any valid mining claim or possession held under existing laws," must be taken to refer to the possessory title conferred by section 2322 (U. S. Comp. Stats. 1901, p. 1425), and not to any mine subject to a valid claim or possession; and hence locators, whose claim had been patented as a townsite, and who afterward failed to do the work required by section 2324 (U. S. Comp. Stats. 1901, p. 1426), thereby lost, under section 2386 (U. S. Comp. Stats., p. 1457), and Statutes of 1867–68, page 696, section 10, their paramount title.

**Public Lands—Townsite—Mining Claim.—**Even if the clause, "or to any valid mining claim or possession," be construed as applying to any mine subject to such claim or possession, the effect would be the same, since, construing it in connection with the previous clause, "to any mine of gold, silver," etc., "any valid claim or possession" must be a valuable mine, and not a mere worthless claim, as, for aught that appeared, the one in suit was.

*For subsequent opinion in bank, see 141 Cal. 291, 74 Pac. 853.

Quieting Title.—A Defendant in a Suit to Quiet Title Sufficiently Connects his title with that of his predecessor, on which he relies, by showing that the predecessor's estate was assigned to his widow, who, with two of the children, conveyed to defendant, though the third child was a minor, and the order assigning the property to the widow might have been in excess of the court's jurisdiction in view of her remarriage, as the title of the two adult heirs vested in defendant which was sufficient for purposes of defense.

Public Land—Townsite—Delivery of Deed.—In a Suit to Quiet Title it was found that the trustee of a townsite platted on public lands of the United States executed deeds to persons whose names appeared on the official map as being entitled thereto, who had not previously obtained conveyances, and, among others, to defendant's predecessor; and that the trustee left "all of said deeds so executed" with one T. Held, that this was sufficient to show delivery, since, if not to be regarded as express finding thereof, delivery was to be inferred therefrom.

Public Land—Townsite—Payment of Purchase Money.—In a Suit to Quiet title, the omission of a finding that defendant's predecessor paid the purchase money for a town lot to the trustee of a townsite is immaterial, it appearing from the evidence that the money was paid by another for him.

Public Land—Townsite—Quieting Title.—Statutes of 1867–68, page 696, section 24, relating to conveyances of townsite lots platted on public lands, provides that every certificate or deed granted to any person pursuant to the act shall be taken as conclusive evidence that all preliminary proceedings have been correctly performed. Held, that the payment of the purchase money would be presumed from the fact of conveyance, and hence the omission of a finding thereof in a suit to quiet title was immaterial.

Public Land—Townsite—Quieting Title.—Civil Code, section 870, provides that, when a trust in relation to real property is expressed in the instrument creating the estate, a deed in contravention of the trust is void. Statutes of 1867–68, page 696, section 15, relating to the conveyance of the lots of a townsite platted on public lands, provides for the sale of unoccupied or vacant land to possessors of adjoining lands or other citizens of the town, and, if any lands remain unsold at the end of six months after filing the plat, they are to be sold at auction. A federal statute provides that any act of the townsite trustees not in conformity to the regulations prescribed by the legislative authority of the state shall be void. Held, that the trustee's deed was sufficient to convey the legal title, though made to one who is not an occupant of the land.

Public Land—Townsite—Quieting Title.—Statutes of 1867–68, page 696, section 15, authorizes conveyances of the lots of a townsite platted on public land, being unoccupied, to possessors of adjoining land, or other citizens of the town. Held, that it could not be in-

ferred from findings in a suit to quiet title that defendant's predecessor was never "in possession of any part or portion" of the lot in controversy, that he was not an occupant, or otherwise qualified to receive a conveyance.

APPEAL from Superior Court, Tuolumne County; G. W. Nicol, Judge.

Action by John F. Callahan against John P. James. Judgment for plaintiff and defendant appeals. Reversed.

F. W. Street for appellant; J. B. Curtin for respondent.

PER CURIAM.—This is a suit to quiet the plaintiff's title to land described in the complaint, situate in the town of Groveland, and known as the "Rhode Island Mining Claim." The plaintiff had judgment, from which, and from an order denying his motion for a new trial, the defendant appeals.

The plaintiff deraigns title to the land in question under a mining location, originally made in the year 1854 by one Reid, and renewed by Reid and one Austin January 1, 1876. The defendant, under the patent of the townsite of Groveland, issued under the federal laws (Rev. Stats., sec. 2387 et seq. [6 Fed. Stats. Ann. 344; U. S. Comp. Stats. 1901, p. 1457]), and a deed of the patentee to Lawrence Murray, of date September 5, 1879, purporting to convey to him lot 8, block 6, as designated on the official map of the townsite, of which lot the land in question is part. The date of the patent is February 10, 1886; that of the original entry of the townsite, October 3, 1877. It is found by the court that the land in question was duly located January 1, 1876, by plaintiff's predecessors, whose title became vested in him March 26, 1896, and that "plaintiff ever since has been the owner and in the possession of said Rhode Island mining claim [specifically described in the findings], and has been working and developing the same as a mining claim." And as conclusion of law it is found that at the date of the townsite entry, October 3, 1877, the land lying within the Rhode Island mining claim was withdrawn from sale or disposition by the government of the United States, and hence was reserved from the operation of the patent to the trustee of the townsite. It is urged by the appellant's counsel that this conclusion of the court was erroneous, and that on the facts found the judgment should have been for defendant.

By respondent's counsel the contrary is asserted; and it is further contended, on the facts found, that defendant has not acquired the trustee's title, and hence that plaintiff was entitled to recover on his naked possession.

In this statement of the questions involved we use the expression "naked possession" advisedly, because it does not appear from the findings that the "possessory title" given to plaintiff's predecessors, the locators of the mine, by section 2322 of the Revised Statutes (5 Fed. Stats. Ann. 13; U. S. Comp. Stats. 1901, p. 1425) has been kept alive by the performance of the annual amount of work required by section 2324 (5 Fed. Stats. Ann. 19; U. S. Comp. Stats. 1901, p. 1426). Accordingly, it is not contended by the respondent counsel—so far as appears from this brief—that the case comes within the operation of the provisions of section 2386 of the Revised Statutes (6 Fed. Stats. Ann. 343; U. S. Comp. Stats. 1901, p. 1457), by the terms of which titles under the township act are made "subject" to the possessory rights of locators. Nor can such contention be successfully made. The possessory title of plaintiff's predecessors was, indeed, valid at the time of the entry of the townsite (which was within the year following the year of the location, and therefore within the time allowed the locators to do the work required), and, had it been kept alive to the time of the commencement of the suit, would have been sufficient to sustain plaintiff's action. For by the express provisions of the law (Rev. Stats. 2386 [6 Fed. Stats. Ann. 343; U. S. Comp. Stats. 1901, p. 1457]) all titles under the townsite act are made subject to the possessory rights of miners; and to the same effect in section 10 of the state law: Stats. 1867–68, p. 696. But by the terms of the statute the right is granted to locators for "so long" only as the law shall be complied with; and upon default of compliance the term of the possessory right or lease given by the statute terminates, and the provisions of the statute no longer apply. The judgment can be affirmed, therefore, if at all, only upon one of two grounds urged in the respondent's brief; that is to say, upon the ground that the land in question was reserved from the operation of the patent by the provisions of section 2392 of the Revised Statutes (6 Fed. Stats. Ann. 351; U. S. Comp. Stats. 1901, p. 1459), or, failing this, upon the ground that (defendant

having failed to connect himself with the patent title) plaintiff's action can be successfully maintained on his possession.

1. The former contention turns upon the construction of section 2392 of the Revised Statutes (6 Fed. Stats. Ann. 351; U. S. Comp. Stats. 1901, p. 1459), the provisions of which are that "no title shall be acquired, under the foregoing provisions of this chapter, to any mine of gold, silver, cinnabar, or copper, or to any valid mining claim or possession held under existing laws." It is not, however, nor can it be, contended, that the case comes within the exception provided for in the first of the two clauses of the section; for under the unvarying decisions of the courts, federal and state, the term "mine" is defined as including only mines valuable for their minerals, or, as expressed in the statute, "valuable mineral deposits" (Rev. Stats., sec. 2319 [5 Fed. Stats. Ann. 4; U. S. Comp. Stats. 1901, p. 1424]; Davis v. Weibbold, 139 U. S. 517–519, 523, 35 L. Ed. 238, 11 Sup. Ct. Rep. 628; Richards v. Dower, 81 Cal. 50, 22 Pac. 304; Dower v. Richards, 151 U. S. 662, 663, 38 L. Ed. 305, 14 Sup. Ct. Rep. 452, and cases therein cited; Smith v. Hill, 89 Cal. 125, 26 Pac. 644; Barden v. Railroad Co., 154 U. S. 288, 38 L. Ed. 992, 14 Sup. Ct. Rep. 1030; Standard Quicksilver Co. v. Habishaw, 132 Cal. 123, 64 Pac. 113; 1 Lindley on Mines, secs. 86, 94), and there is nothing in the case to show that the mine in question is of that character. The contention of the respondent, therefore, more specifically stated, is that the case comes within the exception made by the latter clause of the section, and it is therefore the construction of this clause only that is involved here. This, it is obvious, is susceptible of two constructions. It may refer either to the mine claimed or possessed, or to the claim or possession of the mine. Under the former construction, supplying omitted words, it would read "or to any mine subject to a valid mining claim or possession," etc. Under the latter it would refer to the "possessory right" given to mining locators by the provisions of section 2322 of the Revised Statutes (5 Fed. Stats. Ann. 13; U. S. Comp. Stats. 1901, p. 1425); and, thus construed, its effect would be substantially the same as that of the provisions of section 2386 of the statute (6 Fed. Stats. Ann. 343; U. S. Comp. Stats. 1901, p. 1457) and of section 10 of the state act; that is, it would except such rights from the operation of the patent so long as they should continue

to exist, and, if ultimately patented, forever. The latter construction seems to be most in consonance with the language of the act, and also with its intention as shown by the obvious purposes and the circumstances of its enactment. The chapter of the Revised Statutes relating to townsites (chapter 8, title 32 [6 Fed. Stats. Ann. 341; U. S. Comp. Stats. 1901, p. 1454]) is simply a revision of former statutes, including among others the act of March 3, 1865 (from which section 2386 is taken), and the acts of March 2, 1867 (14 Stats. 541 [6 Fed. Stats. Ann. 353; U. S. Comp. Stats. 1901, p. 1460]), and of June 8, 1868 (15 Stats. 67). In the act of 1867 the only proviso was: "That no title shall be acquired, under the provisions of this act, to any mine of gold, silver, cinnabar or copper." Under the act of 1868 the proviso was: "That no title under [the former act] shall be acquired to any valid mining claim or possession held under the existing laws of Congress": Richards v. Dower, 81 Cal. 50, 22 Pac. 304. In the Revised Statutes both provisos are run together in section 2392, now under consideration. Comparing the several acts enumerated, it appears that prior to the act of 1867 the only saving clause was that referring to mining possessions in the act of 1865, now embodied in section 2386 of the Revised Statutes; the original enactment being prior to the enactment of any mining laws by the government of the United States, and hence apparently not referring to those laws. The purpose of the act of 1868, if we have rightly construed it, would, therefore, be to correct this defect, and to make the former reservation unmistakably applicable to possessions of lands recognized or provided for by the federal laws thereafter enacted; and the general effect of the acts and of the provisions in the Revised Statutes would be simply to preserve both reservations—that is to say, the reservation made in the act of 1865, and that made in the act of 1867. So as to the effect of the legislation, taken together, it can be readily understood that it was intended to except from grants of townsites all valuable mines—as, indeed, was required by section 2318 of the Revised Statutes (5 Fed. Stats. Ann. 4; U. S. Comp. Stats. 1901, p. 1423) ; and also that it was intended, pending the development of mineral deposits, and the ascertainment of their character, to protect miners in the enjoyment of the possessory rights given to them by section 2322 of

the act (5 Fed. Stats. Ann. 13; U. S. Comp. Stats. 1901, p. 1425), as was required by the provisions of section 2319 (5 Fed. Stats. Ann. 4; U. S. Comp. Stats. 1901, p. 1424). But it is impossible to conceive of any reason why exception should be made of lands occupied by miners, demonstrated by subsequent development to be of no value for mining purposes, or, in other words, not to be mines in the statutory sense. The case would, therefore, seem to come within the principle embodied in the maxim, "Cessante ratione legis, cessat et ipsa lex." So, also, it is the obvious intention of the act to dispose of the whole title of the townsite land, either to the mining claimant or to the trustee of the town; that is to say, to the former, in case the land claimed is presently known to be a valuable mine, or subsequently, on final application, proves to be such; to the latter, should the contrary be the case. For by the express provisions of the act (section 2387 [6 Fed. Stats. Ann. 344; U. S. Comp. Stats. 1901, p. 1457]) the lands granted to the trustee are to be disposed of, not only by conveyance to occupants, but—as to lands not thus disposed of—by sale or otherwise, as directed by the state. But upon the construction contended for in the innumerable cases in which mining locations are in fact not of lands of the kind contemplated by the mining laws, and, as the result of development, are subsequently demonstrated not to be such, the lands located would remain undisposed of, contrary to the general intent of the statute, which would be to extend indefinitely the unauthorized possession of the claimant for purposes other than mining, though in continued and designed default in performing the acts required by the law as essential to his title. Thus in the present case, though the mine should prove to be not a mine in the sense of the statute, and though all statutory requirements should be designedly omitted, the lapsed location would, in effect (upon the construction of the law contended for), be made the equivalent of a fee simple title, which was clearly not contemplated by the law. For it is at least clear that it was not the intent of the act to give to miners any other rights than those conferred upon them by the mining laws—that is to say, the land itself—in the event only it should prove to be a mine of the kind described in the decisions cited above, and in the meanwhile the possession of it for purposes of mining upon the terms defined in

the law. Nor would the result be different should we construe the proviso as referring not to the possessory right of the miner, but to the mine itself. For in such case, under the familiar rule embodied in the maxim, ''Noscitur a sociis,'' and the decisions cited above, the terms used in the latter clause must be interpreted in the same general sense as those in the former; that is to say, as referring to actual or valuable mines only: Cases supra. Thus construed, the agreement and disagreement between the cases provided for in the two clauses would be simply thus: In either case the mine must be a valuable mine; but in the former, it must be known to be such at the time of the townsite entry, while in the latter it may not be known until a later period, as the result of subsequent development. We therefore conclude that the case as presented by the findings does not come within the exception prescribed by section 2392 of the act (6 Fed. Stats. Ann. 351; U. S. Comp. Stats. 1901, p. 1459). On the other hand, it is equally clear that it does come within the provisions of the other saving clause, section 2386 (6 Fed. Stats. Ann. 343; U. S. Comp. Stats. 1901, p. 1457); for the entry of the townsite October 3, 1887, was within the period of two years after the location of the mine, January 1, 1876, during which the work required by the law could be performed; and hence, under the express provisions of the section quoted, all titles acquired under the patent were taken subject to ''the possession and the necessary use of the land'' by the locators. Though, as we have seen, the findings fail to show that at the time of the commencement of the action the ''possessory title'' acquired by the locators under section 2322 (5 Fed. Stats. Ann. 13; U. S. Comp. Stats. 1901, p. 1425) of the statute had been kept alive by performance of the work required annually by section 2324 (5 Fed. Stats. Ann. 19; U. S. Comp. Stats. 1901, p. 1426). If, however, on a new trial, it should be shown that work has been performed as required by the law, and other conditions complied with, the plaintiff will then come within the reservations of section 2386 of the statute (6 Fed. Stats. Ann. 343; U. S. Comp. Stats. 1901, p. 1457), and of the corresponding section (being No. 10) of the state law (Stats. 1867–68, p. 696); and he would then be able to maintain his action. But what

would be the effect of a resumption and continuance of work on his claim—if, as seems to be suggested by evidence, he was in default at the date of the filing of the complaint—cannot be determined in this suit.

2. The remaining objections made to the deed are: That the deed from the trustee of the townsite to the defendant's predecessor, Murray, was void for want of delivery, or, if delivered, because in contravention of the terms of the trust; and that the title of Murray has not vested in the defendant. The last objection may be briefly disposed of. The defendant deraigns title under a deed from Mrs. Joanna Wilson, formerly Murray, to whom, by an order of the superior court of date March 5, 1900, the whole of the estate—being under the value of $1,500—was assigned, as the widow of the deceased, Murray, for the use and support of the family of said deceased, two of the three children of Murray joining in the deed, and the other being a minor. The point of the respondent's objection is that "the order setting aside the property to Joanna Wilson was in excess of the jurisdiction of the probate court," she having, by her remarriage, ceased to be the widow of the deceased. If such be the case (and we do not deem it necessary to pass on the point), it would follow simply that the order would be void, and the titles of the heirs would remain unaffected. Nor can we conceive of any process of reasoning to lead us to the conclusion that the effect of the void order could be to vest the title of the whole estate in the minor heir. It would have been, no doubt, in the power of the court, upon the assumption made, to assign the estate to the minor; but until such assignment her rights remain the same as those of the other heirs. The interests of the grantors in the deed as heirs therefore passed to the defendant which is sufficient to meet the objection. Nor are the objections that the deed of the trustee was not delivered to Murray, and that the purchase money was not paid by him, more tenable. It is expressly found that the trustee, on September 5, 1879, being about to go abroad, "did make and execute [deeds] to the persons whose names appeared upon [the] official map of the townsite, . . . . as being entitled thereto, and who had not previously obtained conveyances,"· and among others to Murray, "whose name appeared upon said map on lot 8,

block 6, of said townsite''; and that at the same time the grantor did ''leave all of said deeds so executed'' with one Tannahill. From this, if not to be regarded as an express finding of delivery (Hill v. Den, 54 Cal. 20), delivery is to be inferred (McDougall v. McDougall, 135 Cal. 319, 67 Pac. 778). Nor is the finding material that Murray never paid to the trustee the purchase money. It is sufficient that it was paid by another for him, as appears from the evidence to have been the case; and, though it is not so found, the fact, if essential to the validity of the conveyance (which we do not hold), will, under the provisions of section 24 of the act, be presumed.

The remaining objection is that the trustee had no power to convey to anyone other than to occupants of the land conveyed, and that it is found that Murray did not come within this description. But neither the fact relied on nor the conclusion drawn from it can be admitted. As to the latter, it is a universal principle, except where affected by express statutory provisions, that a deed of conveyance conveys all the interest of the grantor; and this applies equally to a legal title held in trust as to any other. For in the view of a court of law, or of a court exercising legal, as distinguished from equitable, functions, the equitable title is nonexistent, and the legal is, in fact the only title. Nor, with regard to the present case, is there any law making it an exception to the rule. It is, indeed, provided by section 870 of the Civil Code that, ''when a trust in relation to real property is expressed in the instrument creating the estate,'' a deed in contravention of the trust is void. But here the trust expressed in the federal statute, and presumably in the patent, is not expressed otherwise than by reference to regulations thereafter to be enacted by the legislature of the state. The cases cited by the respondent do not affect this proposition. In Biddick v. Kobler, 110 Cal. 191, 42 Pac. 578, all that was held was that in a suit to recover possession by a grantee of the trustee, who was never the occupant, or entitled to the occupancy of the land conveyed, against one who was such occupant, and so entitled at the date of the entry, the equity of the latter could be relied on as a complete defense; all of which follows from familiar principles of equity, and also from the express provisions of section 10 of the state law, providing that the deeds of

the trustees shall not "be deemed to conclude the rights of third persons." But we find nothing in the decision to lead us to suppose that the court intended to hold that the deed in question was ineffectual as a conveyance of the legal title, and though, in some of the cases from other jurisdictions cited by the court, it is held, under the statutory provisions governing them, that such a deed would be void, yet it is said by this court that these "authorities . . . . go much further in the same direction than we are called upon to go here." In one of the cases cited by the court, and perhaps others (Treadway v. Wilder, 8 Nev. 91, 9 Nev. 71), it may be noted the conclusion of the court was based upon the provisions of the federal law there involved, which expressly declared that all deeds made in contravention of the trust should be void. But in the act involved here there is no such provision. It is, indeed, provided that the acts of the trustee in contravention of the regulations to be imposed by state legislation shall be void. But by the state act provision is made for conveyances not only to occupants of lots (as provided in section 10), but also (as provided in section 15) for the sale of "any unoccupied or vacant lands" "to possessors of adjoining lands, or other citizens of said town, at a price not less than one dollar per acre," etc.; and, if any lands remain unsold at the end of six months after the filing of the town plat, they are to be sold at auction: Amador Co. v. Gilbert, 133 Cal. 51, 65 Pac. 130. As to the facts of the case, there is nothing in the findings of the court to indicate that the conveyance was not in accord with some one of the powers of the trustee as above specified. It is not found that Murray was not an occupant of lot 8, block 6, at the date of the entry of the townsites; but merely that he was never "in possession of any part or portion of lot 8, block 6, . . . . within the boundaries of said Rhode Island mine." Nor was it found that he was not of the class described in section 15 of the act as "possessors of adjoining lands," as in fact appears from the evidence was the case; or that he was not a citizen of the town. The findings therefore fail to show that the deed was in contravention of the trust.

We are of the opinion, therefore, that the land in question was conveyed by the patent, and that the title is vested in the defendant, and, consequently, that the judgment can-

not, on the facts found, be sustained; and for these reasons the judgment and order appealed from are reversed and the cause is remanded for a new trial.