PER CURIAM.—For the reasons stated in the foregoing opinion the judgment appealed from is affirmed.

---

STATE EX REL. HICKLIN, RELATOR, *v.* WEBSTER, RESPONDENT.

(No. 1,859.)

(Submitted April 2, 1903.   Decided April 27, 1903.)

*Public Lands—Unsurveyed Portion of Townsite—Conveyance —Judges—Jurisdiction.*

Under Act of Congress, March 2, 1867, as amended by Act, July 1, 1870, and Compiled Statutes of Montana, 1871-2, page 546, *et seq.,* a district judge has no jurisdiction to issue a deed for an unsurveyed portion of a townsite to a person not claiming to be an occupant of the land at the time the townsite was entered, before such portion had been surveyed, platted, and necessary streets, etc., laid out as required by Section 5117 of the Political Code.

*Mandamus* by the state, on relation of E. B. Hicklin, against F. C. Webster, judge of the Fourth judicial district, and ex officio probate judge of Missoula county, and trustee of Missoula townsite.   Peremptory writ denied.

Messrs. *Duncan & Draffen,* and Messrs. *Nolan & Loeb,* for Relator.

Messrs. *Marshall & Stiff;* and *Mr. Frank Woody,* for Respondent.

MR. COMMISSIONER POORMAN prepared the opinion for the court.

This is an application for a writ of mandate to the judge of the Fourth judicial district of Montana, ex officio probate judge of Missoula county, and trustee of the townsite of Missoula, commanding him to execute and deliver to relator a deed to a certain piece of land, 50 by 105 feet in dimensions, situate within the limits of such townsite as originally entered. An alternative writ was issued, and the respondent, the judge of said district court, has shown cause by answer. The relator had previously made application to respondent for a deed to said piece of land, which application had been denied. At the hearing in the district court the First National Bank of Missoula filed a protest against the issuance of a deed to relator, controverting the material allegations of relator's application, and claiming the land as its own, but made no demand for a deed. School District No. 1 of Missoula county also filed with respondent a petition requesting that the piece of land in question be surveyed, platted, and offered for sale at public auction for the benefit of such school district.

It appears from the record that the townsite was entered under the Act of Congress approved March 2, 1867 (14 Stat. 541), as amended by Act approved July 1, 1870 (16 Stat. 183), providing, in substance, "that when any portion of the public domain was settled upon and occupied as a townsite it might be lawful * * * for the judge of the county court for the county in which such townsite was situated, to enter the land * * * in trust for the several use and benefit of the occupants thereof * * * the execution of which trust as to the disposal of the lots in such town, and the proceeds of the sale thereof to be conducted under such regulations as may be prescribed by the legislative authority of the state or territory in which the same might be situated."

This townsite was surveyed and the official plat thereof was filed in the office of the county clerk of Missoula county on the

5th day of April, 1871. It further appears that the particular piece of land for which conveyance is sought is a portion of a a. larger piece or strip of land included within this townsite, which strip has never been surveyed, numbered, or platted, except as it is included within the exterior boundaries of said townsite, and has never been laid off into lots and blocks; that the necessary roads, streets, lanes, and alleys, if any are necessary through the same, have not been laid out or dedicated to the public use; and that the only description of the land for which a conveyance is sought, which respondent had or was able to obtain, was that furnished by relator from a private survey which relator had caused to be made of that particular part of said strip of land for which he demanded a deed. A jurisdictional question is thus presented, as to whether the respondent, as such trustee, at the hearing before him, had jurisdiction in the premises further than to ascertain whether antecedent acts had been complied with.

The Acts of Congress leave it entirely to the state and territorial legislatures where the land is situate to prescribe the mode of procedure to be observed in dealing with land within townsite entries, and, if the laws of the state of Montana in force with respect thereto at the time the application was made for this deed required this land to be "surveyed into suitable blocks and lots," the respondent, as such trustee, upon ascertaining that this had not been done, could go no further. (Section 2391 Rev. St. U. S. (U. S. Comp. St. 1901, p. 1459); *Edwards* v. *Tracy,* 2 Mont. 49; *Hershfield* v. *Rocky Mt. B. T. Co.,* 12 Mont. 102, 29 Pac. 883; *Ming* v. *Foote,* 9 Mont. 221, 23 Pac. 515; *County of Amador* v. *Gilbert,* 133 Cal. 53, 65 Pac. 130.)

The territorial law in force at the time this townsite was entered made specific provision that a survey and plat should be made, and that the townsite should be surveyed "into blocks, lots, streets and alleys," and that no lot should exceed in area 4,200 square feet. Further specific provisions were made as to the manner of disposing of lots, both claimed and unclaimed;

but no provision whatever was made, prescribing a method of dealing with any part of a townsite not "surveyed into blocks and lots." (Comp. St. 1871-72, p. 546 *et seq.*) It was evidently the intent of the territorial law that all the land included within a townsite entry should be "surveyed into blocks, lots, streets and alleys" in the first instance, and no further survey was provided for. The law so far gives the trustee authority to dispose of only that part of a townsite which had been surveyed into blocks and lots. What, then, shall be done with the unsurveyed portion?

In this connection we find an able opinion cited in respondent's brief, written by Mr. Justice Belford, of the supreme court of Colorado, and cited in the case of *Martin* v. *Hoff* (Ariz.), 64 Pac. 448, where the court uses this language: "Some land would be found in each subdivision not actually built upon or otherwise occupied for town purposes. What, then, is to be done with this land not occupied or improved? To whom is it to go? Clearly, not to the general government, for its title has ceased by the issuing of the patent; not to the territory, for it never had any interest; not to the trustee, for he is a mere conduit or channel through which the title passed from the government to the *cestui que* trust; not to the individual citizen, for the Act of Congress defines the extent of his individual interest. The trust is manifestly a double one— the first a trust for the occupants of the town as individuals; the other a trust for them collectively as a community * * * *. This whole matter is left to the local legislature. To it belongs the creation of the tribunal before whom individual rights shall be adjudicated. It prescribes the kind of evidence necessary to make good a claim of title. It prescribes what kind of disposition shall be made of the money arising from the sale of lots, and in fact has full and plenary power over the whole subject-matter of the trust. And to strengthen this power conferred by congress, the law declares that any act done by the trustee, inconsistent with or in violation of the rules and regulations prescribed by the legisnature for the execution

of the trust, shall be void and of none effect. Congress seems to have contented itself with declaring simply who might enter the land, and denominating the *cestui que* trust; all else it hands over to the territorial legislature, which is better fitted, on account of its proximity to the subject-matter of the trust, to supervise and direct its details. * * *. By an oversight the legislature made no provision for the disposition of portions of this land to which no individual claim existed, and there is nothing in either Act of Congress from which a power of sale in the trustee can be inferred, and much to repel such an inference. The Acts of Congress leave it altogether to the territorial legislature to determine what disposition shall be made within the objects of the trust of town lots belonging to the community at large, and of the proceeds of such of them as may be sold. This part of the trust most clearly cannot be executed without the intervention of local legislation. The trustee cannot sell under the Acts of Congress, because they do not authorize him to sell any portion of the trust property, or to make any disposition whatever of moneys that might come into his possession on such sale. It being evident that it was the intention of congress that the lands included within the townsite, and to which no rightful claim exists on the part of any individual, should be sold, and the proceeds disposed of under the directions prescribed by the legislature, who are to establish rules and regulations for the whole execution of the trust; and, it being further evident that the legislature failed to provide for the disposition of the same, it is clear to us that any sale of such land made by the probate judge or trustee, in the absence of these rules and regulations, was wholly unwarranted and absolutely void * * *. It was entirely competent for him to make conveyances to those having a valid and rightful claim to land at the date of the entry, provided they furnished the proper and requisite proof,—beyond this his acts were *ultra vires*, and could in no manner affect the rights of the community." (*City of Denver* v. *Kent*, 1 Colo. 336.)

In 1895 the legislature of the state of Montana enacted Sec-

tion 5117 of the present Political Code. Prior to that time
there was no authority given the trustee by legislative enact-
ment for disposing of unsurveyed portions of a townsite, and
he can only dispose of such land now in the manner authorized
by this section. The land must first be surveyed into lots and
blocks. All necessary roads, streets, and alleys must be laid
through the same, and dedicated to the public use. The relator
does not claim to have been an occupant of this land at the time
of the entry of this townsite, and does not claim to have occu-
pied the same prior to the 21st day of April, 1902. He is not,
therefore, a prior claimant under the law in force at the time
of the entry of this townsite, or at the present time, as that law
and the rights of occupants thereunder is considered and inter-
preted in the case of *City of Helena* v. *Albertose,* 8 Mont. 499,
20 Pac. 817, and the land which the relator claims, if required
therefor, may be taken for a street or alley; and there is nothing
in this record to show that the land claimed by relator, or at
least a portion of it, will not be within a necessary street or
alley when the survey is finally made. The trustee of a town-
site has no authority to issue a deed conveying any part of a
street. (*Hershfield* v. *Rocky Mt. B. T. Co.,* 12 Mont. 102,
29 Pac. 883; *Parchen* v. *Ashby,* 5 Mont. 69, 1 Pac. 204.)

It is claimed by counsel for relator, in the very able brief
filed, that there "is no provision of law anywhere, or in force
at any time, authorizing a subsequent survey and plat to be
made." Counsel, perhaps, have reference to the law in force
at the time this townsite was entered, for it cannot be contended
that Section 5117 of the present Political Code does not give
this authority; and whether the plat filed as a result of this
subsequent survey is called a new plat, or the completion of the
old one, is immaterial. It must be done before the trustee has
jurisdiction to grant title to this land, or any part of it.

Counsel for relator further contend that "the law presumes
that everything was done that was required should be done by
the predecessors of the respondent trustee with reference to the
entry of the townsite of Missoula, and with reference to the

acts required to be done by his predecessors under the law, immediately following the entry of said townsite."

In the case of *Ming* v. *Foote, supra,* this court quotes with approved the following language from the opinion of Mr. Justice Field in *Smelting Company* v. *Kemp,* 104 U. S. 640, 26 L. Ed. 875: "So, also, according to the doctrine in the cases cited, if the patent be issued without authority, it may be collaterally impeached in a court of law. This exception is subject to the qualification that when the authority depends upon the existence of particular facts, or upon the performance of certain antecedent acts, and it is the duty of the land department to ascertain whether the facts exist and the acts have been performed, its determination is as conclusive of the existence of the authority against any collateral attack as is its determination upon any other matter properly submitted to its decision." The court then adds, as a part of the opinion in *Ming* v. *Foote:* "The authority of the probate judge did depend upon the existence of certain facts. It was his duty to ascertain whether these facts existed. His determination is evidenced by his deed, and the same is conclusive against collateral attack."

The respondent trustee made inquiry as to whether these antecedent acts had been performed, and, finding no record or other evidence that the acts required by law had been complied with, very properly decided that he had no authority to issue a deed to relator.

The view here taken renders it unnecessary to discuss the other questions raised by respondent in this case.

We are of the opinion that the application for a peremptory writ of mandate should be denied.

PER CURIAM.—For the reasons given in the foregoing opinion, the alternative writ of mandate heretofore issued in this cause is quashed, and the peremptory writ prayed for denied.